Farida **BADEEN**, Plaintiff,

v.

**BURNS INTERNATIONAL SECURITY SERVICES, INC., Defendant.**

**No. B–90–149–CA.**

United States District Court,
E.D. Texas,
Beaumont Division.

June 4, 1991.

---

Lansford O. Ireson, Jr., Bonhan, Carrington & Fox, Houston, Tex., for plaintiff.

John V. Jansonius, Haynes & Boone, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

WENDELL C. RADFORD, United States Magistrate Judge.

Farida Badeen ("Plaintiff") filed a four count complaint against her former employer, Burns International Security Services, Inc. ("Defendant") alleging: 1) she was denied promotion and was demoted because of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; 2) that her former employer paid her lower wages than male employees for equal work in violation of the Equal Pay Act. 29 U.S.C. § 206; 3) that she was not paid one and one-half times her regular rate of pay for the hours she worked in excess of forty hours per week in violation of the Fair Labor Standards Act. 29 U.S.C. § 207; and 4) that she was subjected to intentional infliction of emotional distress during the course of her employment.

The parties appeared in person and by and through their attorneys. A jury was selected and the issues relating to Plaintiff's claims were submitted to the jury. This case was initially set for trial before the Honorable Joe J. Fisher, however, upon written consent of both parties, the case was heard before this Court. The parties agreed to submit the Title VII claim to the jury, not to be bound by the decision but for an advisory opinion. *See Schlitt v. State of Florida,* 749 F.2d 1482 (11th Cir. 1985). The jury returned a verdict in favor of the Plaintiff on her Equal Pay Act claim, her Fair Labor Standards claim and on her Title VII claim. The jury, however, denied Plaintiff's pendent state claim of intentional infliction of emotional distress.

The Court finds that the jury verdicts returned in favor of the Plaintiff on her Equal Pay Act and the Fair Labor Standards Act claim are correct and, therefore, finds in favor of the Plaintiff on those two counts. The Court finds that Plaintiff should be allowed $3,260.00 as compensation for the violation of the Equal Pay Act.[1] In addition, the Plaintiff should be allowed $3,251.25 as compensation for the violation of the Fair Labor Standards Act.[2] The Court finds that the jury verdict returned

---

1. Under the Equal Pay Act, Plaintiff shall be awarded $3,260 based on the following:

   1) From January 1, 1988 to September 1, 1988 Plaintiff received $4.50 an hour.
   2) A Client Services Supervisor ("CSS") made $6.50 an hour during that same time period.
   3) Plaintiff worked a total of thirty-four (34) weeks at an average of forty (40) hours per week.
   4) The difference between what Plaintiff actually made and what she would have made as a CSS was $2,720.00.
   5) From September 1, 1988 to November 1, 1988 Plaintiff made $5.00 an hour.
   6) A Client Services Supervisor made $6.50 an hour during that time period.
   7) Plaintiff worked a total of nine (9) weeks at an average of forty hours per week.
   8) The difference between what Plaintiff actually made and what she would have made as a CSS was $540.00.
   9) The $2,720.00 and the $540.00 equal Plaintiff's damages of $3,260.00 under the Equal Pay Act, 29 U.S.C. § 206.

2. The Plaintiff's damages of $3,251.25 were calculated as follows:

   1) From November 3, 1988 to December 29, 1988 Plaintiff worked an average of fifteen (15) hours of overtime.
   2) From November 3, 1988 to December 29, 1988 Plaintiff was receiving $5.00 an hour.
   3) From December 29, 1988 to May 16, 1989 Plaintiff worked an average of fifteen (15) fours of overtime, less twenty hours for which she had been paid during that time period.
   4) The difference between what Plaintiff made and what she should have received was $810.00.
   5) From December 29, 1988 to May 16, 1989 Plaintiff worked an average of fifteen (15) hours of overtime.
   6) From December 29, 1988 to May 16, 1989 Plaintiff was receiving $5.50 an hour.
   7) The difference between what Plaintiff mad and what she should have received was $2,351.25.
   8) The $810.00 and the $2,351.25 equal Plaintiff's damages of $3,161.25.

dismissing Plaintiff's claim for intentional infliction of emotional distress is correct and should be entered accordingly. Finally, the Court makes the following findings of fact and conclusions of law with regard to Plaintiff's Title VII claim.

## I.

### FINDINGS OF FACT

1. Plaintiff, a female, brought this suit against her former employer, Burns International Security Services, Inc. ("Burns") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

2. Burns provides on-site security services to businesses that have a need for professional protection from fire, theft, intrusion, and other threats to safety and security. Approximately 300 people are employed in the Beaumont District of Burns, many of whom are assigned to work as on-site security guards at refineries, chemical plants, department stores and at the Jefferson County Airport.

3. Plaintiff began working for Burns as a Security Guard on October 17, 1986. Prior to her employment at Burns, Plaintiff had a variety of jobs, including: "filing department" group leader at Liberty Mutual Insurance Co.; secretary for St. George Orthodox Church; office manager for Ward Patrol, Inc. in Detroit; secretary for Antiochan Village Summer Camp; and dispatcher for the Lathorp Village Police Department.

4. For most of her first 15 months at Burns, Plaintiff was assigned to the Jefferson County Airport as a Security Guard. In that job, she screened passengers boarding flights and checked luggage to make sure no firearms were present. In late 1986, Plaintiff was promoted and her duties were expanded to include scheduling the other Security Guards assigned to Jefferson County Airport.

5. In January 1988, Plaintiff was again promoted and assigned to a "newly created" position in which she reported direct-ly to the Client Services Supervisor at Burns.[3] Plaintiff performed some of the duties of "Field Inspector," as well as several office and clerical duties. In addition, Plaintiff regularly filled in for Security Guards who were unavailable for work.

6. In her new position, Plaintiff was trained under Client Services Supervisors, Lew Cromwell and Charles Ross. The Client Services Supervisor has overall responsibility for ensuring that the security needs of Burns' clients are properly met. On a full time basis, the Client Services Supervisor is responsible for: 1) maintaining financial controls; 2) staffing the client with properly trained security guards; 3) ensuring proper supervision of security guards; 4) interfacing with clients and attending to special client needs and problems; 5) ensuring compliance with applicable federal and state laws regarding employment practices; and 6) working with the timekeeper to ensure accurate and on-time payment of wages and supplier invoices.

The Client Services Supervisor is also responsible for supervising anywhere from 15 to 18 client sites. The Client Services Supervisor must also be available to fill in for security guards at the various client sites. The Client Services Supervisors reported to Burns' District Manager, Mr. Kent Dillow.

7. An opening for Client Services Supervisor occurred in November 1988 and in February 1989. Farida Badeen applied for the position of Client Services Supervisor both times.

8. The Plaintiff, a female, was qualified for the position of Client Services Supervisor. Specifically, Plaintiff had entry level technical, analytical, supervisory, communication and administration skills as required by the job description for the position of Client Services Supervisor. Plaintiff's experience included: training new security guards; checking work sites; coordinating some time sheets; scheduling; and she also

---

**3.** This new position has been called an "inspector" position and an "assistant to client supervi- sor" position.

did some interviewing. Plaintiff also had twenty-four hour service responsibility for other subordinates as required by the application form for Client Services Supervisor. Plaintiff received all of this training and experience as a direct result of working with Charles Ross and Lew Cromwell. Another factor indicating her qualification for the position was Mr. Charles Ross' assessment that Plaintiff was a highly qualified and motivated individual for the position and that he found her work to be excellent.

The Court finds that Plaintiff's asthma condition would not have prevented her from being qualified for the position of Client Services Supervisor, as that condition only precluded her from working in an industrial environment on a regular basis for extended periods of time, which were not required by or a qualification for the position of Client Services Supervisor.

9. Plaintiff was not hired for the position of Client Services Supervisor when she applied for the position in November 1988 or when she applied for the position in February 1989.

10. In November of 1988 after Burns failed to promote Plaintiff, they hired a male with lesser qualification, namely Garland Cowart. Although Mr. Cowart had some experience with another security service company, Pinkerton, he did not have the equivalent prior experience in the security industry as the Plaintiff. Mr. Cowart was not better qualified than the Plaintiff and on February 10, 1989, after two months on the job, Mr. Cowart resigned.

11. Again, in February of 1989 when the position of Client Services Supervisor opened, Defendant failed to promote the Plaintiff and instead hired another male with less qualifications namely, Jerry Powell. Mr. Powell was hired partly based on his results he achieved on a Personality Development Inventory ("PDI") test administered by an independent consulting firm and given to the applicants. After an evaluation of the candidates, Jerry Powell was selected for the job of Client Services Supervisor. Mr. Powell was considered an attractive candidate because of the results

of the PDI test. However, because the PDI results did not recommend the Plaintiff she was not hired.

12. Mr. Dillow's testimony that he offered the vacant Client Services Supervisor position to Beverly Smith was not a good faith offer and in fact was a sham offer. Although Ms. Smith had been employed by Burns for approximately five years, through promotions she had risen from District Secretary to Personnel Specialist in Burns' Beaumont District and would not have taken the position. Mr. Dillow knew that Plaintiff would not have taken the position and that she was not qualified for the position because: 1) Ms. Smith was unavailable to work on a twenty-four hour basis; 2) Ms. Smith was not given the PDI test in order to determine whether she would be qualified for the position, even though other applicants had taken the test; 3) Ms. Smith would have had to take a salary cut of $7,000 which was a reduction of forty percent (40%) from her present salary; 4) Ms. Smith was unavailable to fill in for other security guards on the weekends because of her family obligations as required by the position.

13. The Defendant has produced what it labels as non-discriminatory reasons for not hiring the Plaintiff. The reasons proffered by the Defendant for not offering the position to Plaintiff were: 1) Plaintiff was easily frustrated; 2) Plaintiff did not interact well with clients; and 3) Plaintiff was not recommended by a personality test.

14. The reasons set forth by the Defendant were merely a pretext for discrimination. For example, Plaintiff had been highly recommended by Charles Ross a former Client Services Supervisor. In addition, Plaintiff had never been given a bad evaluation or been notified by anyone at Burns about any poor performance while at any of her positions. The Plaintiff did have client contact and had worked satisfactorily with them on previous occasions. The PDI test given to the Plaintiff was not an indication of whether a person could or could not work well with clients. A major flaw in the PDI was that the then present *district manager*, Kent Dillow had also taken

the PDI but had *not been recommended by* the PDI test, yet he was still promoted to district manager. Moveover, Kent Dillow states that he had offered the position to Ms. Smith, yet she had also never been given the PDI test. The PDI was simply another example of Burns' pretext for discrimination.

15. After the position of Client Services Supervisor was filled, Burns decided to reassign Plaintiff to a position which did not involve as much responsibility. In fact, Mr. Dillow and his superior decided that the position of "Inspector" or "Assistant to Client Services Supervisor," in which Plaintiff worked at that time should be abolished because of costs.

Mr. Dillow then informed Plaintiff that she would return to work in her previous position of security guard, as a site supervisor with one of Burns' clients. However, the assignment offered to the Plaintiff was at a chemical plant and Plaintiff's respiratory condition prevented her from working at such a plant on a full time basis, thus Plaintiff had to turn down that offer. Mr. Dillow then offered her positions at the Jefferson County Airport, a position where Plaintiff had been assigned and had worked at in her first 15 months of employment.

16. Plaintiff left Burns on May 16, 1989 and did not look for other employment after leaving Burns until September 1989, when she went to work for a balloon company. She now owns that company. She has not looked for substantially equivalent employment to her job at Burns since leaving Burns on May 16, 1989.

17. The Court finds that the jury verdict returned in favor of Plaintiff on her Equal Pay Act claim, 29 U.S.C. § 206 is correct and finds that Plaintiff shall be awarded $3,260.00 as actual damages for that claim.

18. The Court finds that the jury verdict returned in favor of Plaintiff on her Fair Labor Standards Act claim, 29 U.S.C. § 207 is correct and finds that Plaintiff shall be awarded $3,251.25 as actual damages for that claim.

19. The Court finds that Burns failed to show to the satisfaction of this Court that the acts and omissions giving rise to the causes of action were in good faith or that there were reasonable grounds for believing that they were not in violation of either 29 U.C.C. § 206 or 29 U.S.C. § 207.

20. The Court finds that Burns, an employer who violated the provisions of §§ 206 and 207 shall be liable to the Plaintiff an additional $6,511.25 as liquidated damages pursuant to 29 U.S.C. § 216.

21. The Court finds that Plaintiff has achieved only a partial or limited success on her claims. The Plaintiff sought over a million dollars in punitive damages for alleged mental anguish. Moreover, the Plaintiff sought damages for future loss as a result of her demotion claim, but was unsuccessful. In addition, the Court notes that Plaintiff's attorney was charging an hourly rate of $145.00; however, the reasonable and customary rate for attorneys in the Beaumont area in a civil rights case is approximately $100.00 an hour. Plaintiff's attorney also has entries in his time sheets which indicate that he charged for services which may not have been necessary. These factors require that Plaintiff's attorneys fees be reduced. The Court finds that Plaintiff's attorney's hourly rate shall be reduced from $145.00 an hour to $100.00 an hour. Plaintiff's attorney's total number of hours worked on the case (337) at $100.00 an hour total $33,700.00. This amount will be reduced by 25% because Plaintiff was successful on only three of her four claims. Therefore, Plaintiff shall be awarded $25,275.00 as reasonable and necessary attorneys fees.

II.

*Conclusions of Law*

The Court is vested with jurisdiction because this suit involves a federal question, namely whether the Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

A. TITLE VII PROMOTION CLAIM

1. The order of proof and assignment of burdens is critical in determining

Title VII cases. A plaintiff's claim alleging discriminatory treatment for failure to promote under 42 U.S.C. § 2000e et seq. is analyzed using a three-step proof analysis: 1) the plaintiff must establish a prima facie case of discrimination; 2) if the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action; and 3) if the defendant has articulated a legitimate, non-discriminatory reason for its action, the plaintiff must prove by a preponderance of the evidence that the reasons proffered by the defendant are not its true reasons, but were merely a pretext for intentional discrimination on account of sex. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–254, 101 S.Ct. 1089, 1093–1094, 67 L.Ed.2d 207 (1981).

### Plaintiff's Prima Facie Case

■ 2. The plaintiff may establish a prima facie case of discrimination if she proves by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination. *Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). The standard for establishing a prima facie case was extrapolated from the *McDonnell* Court which had set forth a four part test for establishing a prima facie case. Under *McDonnell,* the plaintiff must show:

1. that she belongs to a protected minority class;
2. that she applied and was qualified for the job from which the employer was seeking applicants;
3. that she was discharged or not hired;
4. that the employer filled the position in question with a non-minority person.

*Id.* 411 U.S. at 802, 93 S.Ct. at 1824. Courts have cautioned that the prima facie case standard is not a rigid, mechanized requirement. Rather, the test must be applied with flexibility according to the facts of each individual case is determining the ultimate question, namely whether there is sufficient evidence to permit an inference of sex discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 1824 n. 13, 36 L.Ed.2d 668 (1973); *Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1506 (5th Cir.1988).

■ In this case, the Plaintiff has established a prima facie case of discrimination for failure to promote based on sex, in particular: 1) Plaintiff is a female; 2) Plaintiff was qualified for the position of Client Services Supervisor; 3) Plaintiff sought but was denied the promotion; and 4) the circumstances of the non-promotion give rise to an inference of discriminatory treatment. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *Hamilton v. Morris County, Tex.,* 484 U.S. 897, 108 S.Ct. 231, 98 L.Ed.2d 189 (1987).

### Burns did not Articulate a Non–Discriminatory Reason for not Promoting Plaintiff

3. If a plaintiff establishes the prima facie case, then the burden of production would shift to the defendant. The defendant would then have to produce or articulate some legitimate, nondiscriminatory reason for the employee's rejection. If the defendant satisfies its burden, the presumption raised by a plaintiff's prima facie case would be rebutted and the factual inquiry would proceed to a new level of specificity. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).

■ Burns did not satisfy its burden of articulating a legitimate, non-discriminatory reason for Plaintiff's non-selection. The Plaintiff had been strongly recommended for the position and had previously worked with clients. After considering the experience of the Plaintiff, a female, the conclusion was still reached that Mr. Garland Cowart and Mr. Jerry Powell, both males, were the best qualified to perform the work of Client Services Supervisor.

### Plaintiff Satisfies her Ultimate Burden of Proving that Burns' Articulated Reason for Plaintiff's Non–Promotion is a Pretext for Intentional Discrimination

■ 4. If the defendant succeeds in rebutting the burden, then the plaintiff must prove by a preponderance of the evidence

that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff may satisfy his burden by proving by a preponderance of the evidence that the articulated reason is a sham; and, more specifically, a sham intended to cover up the employer's real motive, sex discrimination. *See Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1507–1508 (5th Cir.1988).

■ In this case, this Court finds that the Defendant's proffered reasons for not offering the Plaintiff the position of Client Services Supervisor were a pretext for discrimination. The evidence shows that the PDI test used, her health problems and the fact that she could not work well with clients were intended to cover up the Defendant's real motives, namely sex discrimination. The Defendant's evidence that each time there was an opening for Client Services Supervisor, the job was first offered to another woman, Beverly Smith, was another cover up for sex discrimination.

The evidence also establishes that Defendant's alleged legitimate, non-discriminatory explanation for her non-selection to the position of Client Services Supervisor fails to demonstrate that Burns' articulated reason is not a pretext for discrimination based on sex. Therefore, Plaintiff has established that the Defendant has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

5. The Court finds that the Defendant failed to promote the Plaintiff and accord-ingly, it is ordered that judgment be entered in favor of Plaintiff on her claim of discrimination based on non-promotion in the amount of $7,248.16.[4]

## B. TITLE VII DEMOTION CLAIM

The Evidence at Trial Does Establish A Prima Facie Case

■ 6. A prima facie case of discriminatory demotion requires proof that: (1) Plaintiff is female; (2) she was demoted; and (3) the circumstances of the demotion give rise to an inference of discriminatory treatment.

7. Plaintiff has established that she was is a member of a protected class.

■ 8. The testimony at trial establishes that the position Plaintiff occupied beginning in January 1988 was eliminated but later filled by a male. At that time, Plaintiff was offered to be transferred to a position with less responsibility.

9. The evidence does not support an inference of demotion based on sex.

## C. MITIGATION OF DAMAGES

■ 10. Employment discrimination plaintiffs have a duty to mitigate damages, and in the case of employee's complaining about non-promotion, this duty requires remaining on the job. *Jurgens v. EEOC,* 903 F.2d 386 (5th Cir.1990) An employee is precluded from recovering lost wages if she fails to do so. *Id.*

■ The Court finds that Plaintiff has established a violation of Title VII. Plaintiff is allowed to recover damages of

---

4. The Plaintiff's damages for failure to promote were calculated as follows:

1) Plaintiff earned $1,510.00 from November 1, 1988 to December 31, 1988.
2) Plaintiff earned approximately $800.00 from January 1, 1989 to February 1, 1989. (4 weeks at 5.00 an hour).
3) Plaintiff earned approximately $3,080.00 from February 1, 1989 to May 16, 1989. (14 weeks at 5.50 an hour).
4) Plaintiff earned a total of $5,390.00 from November 1, 1989 to May 16, 1989.
5) Plaintiff, as a client services supervisor would have earned:

| | |
|---|---|
| From November 1, 1988 to May 16, 1989 (27 weeks) times $323.08 (Client Services Supervisor Salary) | = $ 8,723.16 |
| From November 1, 1988 to May 16, 1989 (6.75 months) times $580.00 (value of benefits received by a Client Services Supervisor) | = $ 3,915.00 |
| | $12,638.16 |

6) Plaintiff's earnings of $5,390.00 minus what she would have earned $12,638.16 equal her damages of $7,248.16 for failure to promote.

$7,248.16 for lost income from November 1, 1988 to May 16, 1989. However, Plaintiff did not make reasonable efforts to mitigate her damages, and future damages are denied. The evidence establishes that Plaintiff was not available to work although she had been called and offered work after May 16, 1989.

11. Plaintiff still had a duty to use reasonable diligence to find "substantially equivalent" employment. *Sellers v. Delgado College*, 902 F.2d 1189 (5th Cir. 1990). Failure to do so precludes an award of back pay and lost future wages. Title VII defendants do not have the burden of proving the availability of substantially equivalent employment when the plaintiff has not looked for substantially equivalent employment. Rather, the defendant need only show that the Plaintiff has not made reasonable efforts to obtain work. Here, Plaintiff did not make any reasonable efforts to obtain other work until several months after leaving Burns.

12. Plaintiff's failure to make reasonable efforts to obtain work precludes her from recovering damages for lost wages from May 16, 1989 forward.

13. Based on the foregoing findings of fact and conclusions of law, it is ordered that judgment be entered in favor of Plaintiff on her Title VII claim for failure to promote.

14. Based on the foregoing findings of fact and conclusions of law, it is ordered that Plaintiff's claim for damages on her Title VII claim of demotion be denied.

15. This opinion will serve as the court's Findings of Fact and Conclusions of Law in accordance with Rule 52(a), FED.R.CIV.P. To the extent any of the findings of fact are conclusions of law, or conclusions of law are findings of fact, they shall be considered accordingly.