**Betty Ann MORRIS, Plaintiff,**

**v.**

**COMMUNICATIONS SATELLITE CORPORATION, Defendant.**

Civ. A. No. 88–3480.

United States District Court, District of Columbia.

Oct. 1, 1991.

Daniel B. Edelman, John F. Colwell, Yabolonski, Both & Edelman, Washington, D.C., Joseph M. Sellers, Washington Lawyers' Committee for Civil Rights Under Law, for plaintiff.

Robert J. Smith, Neal D. Mollen, Morgan, Lewis & Bockius, Washington, D.C., for defendant.

### MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Before the Court is the defendant's Motion for Summary Judgment, plaintiff's opposition thereto, and defendant's reply in the above-captioned action. In her amended complaint, plaintiff challenges the action of defendant Communications Satellite Corporation ("COMSAT") in filling the position of Assembler Specialist/Group Leader in its Assembly Department effective June 15, 1987. The plaintiff, Betty Ann Morris, is a black female who was 54 years old at the time the position was filled. The per-

son chosen for the position is a white male who was 30 years old when selected. The plaintiff claims that the decision not to hire her was unlawful discrimination based on race and age in violation of 42 U.S.C. § 1981 ("Section 1981") and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a).

The Court has carefully considered the submissions of the parties and the entire record herein. Because it appears that there are disputes as to genuine issues of material fact in this action, the Court shall deny the Motion for Summary Judgment.

## I. Background

In October 1978, the plaintiff was hired as an Assembler Specialist in COMSAT's Assembly Department. She worked with several different managers while an assembler at COMSAT, all of whom gave her generally positive work ratings. *See* Morris Dep. Ex. 3, Ex. 6. In 1985, her supervisor, Mark Wilson, gave her an "Exceptional" rating (the highest rating possible), but expressed reservations regarding her communications skills. *See* Morris Dep. Ex. 15.

In December 1985, plaintiff transferred to COMSAT Technology Products, a separate division of COMSAT; this position was eliminated in a reduction-of-force in December of 1986 and she was terminated as a COMSAT employee. In March 1987, plaintiff accepted temporary work in COMSAT's Assembly Department.

In April, 1987, COMSAT posted a notice of a permanent vacancy in Assembly Department in the position of Assembler Specialist/Group Leader. Plaintiff applied for this position. Mark Wilson, who was filling the position, chose between only two candidates, the plaintiff and Randall Fowler, another temporary employee, who was a white male about thirty years old. Fowler was selected instead of the plaintiff.

There are numerous disputes between the parties about the underlying facts. One major area of disagreement is the extent of the plaintiff's communication skills. The defendant cites passages from the plaintiff's various work evaluations during her tenure as an Assembler Specialist to support the contention that throughout her employment, the plaintiff's performance had one significant weakness: that she failed to communicate with her supervisors regarding critical aspects of her job.[1] The plaintiff vigorously contests this assertion, stating that the defendant cites her evaluations out of context, and that in fact the evaluations praise her performance in leadership and training, functions involving communication.[2] Plaintiff also argues that Mark Wilson offered no examples of instances in which he requested Ms. Morris' input and she was reluctant to respond, and notes that any lack of communication could derive from Wilson's failure to request information rather than the plaintiff's reluctance to communicate. *See* Morris Decl. ¶ 10.

Plaintiff further contends that the assertions regarding her alleged lack of communication skills are belied by the fact that in 1979 she successfully performed additional functions in COMSAT's Assembly Department as a Group Leader, following a one-week COMSAT training course in leadership skills. *See* Morris Dep. 24; Morris Decl. ¶ 2.[3] The defendant counters that the plaintiff never was a Group Leader—the position was not even created until 1987—and neither did she perform the functions of a Group Leader.

There is also a great deal of dispute over Randall Fowler's qualifications, or lack thereof, for the position of Assembler Spe-

---

**1.** For example, in Mark Wilson's 1985 evaluation of the plaintiff he noted that "For an assembler with her background and experience, Betty is much too quiet, often not expressing her opinions or difficulties, but holding her tongue and solving problems on her own." Morris Dep. Ex. 15.

**2.** *See,* for example, plaintiff's October 1979 evaluation by her then-supervisor Harry Reese, praising her as "good at directing projects … [s]he can organize work for up to five people." Morris Dep. Ex. 6.

**3.** *See also* Harry Reese's October 1980 evaluation, stating that for most of the review period, "Betty was a group leader for the Assembly Department" and giving her a "commendable" rating. Morris Dep. Ex. 7.

cialist/Group Leader. Plaintiff asserts that the minimum requirements for the position were ten years of experience in electronic assembly/prototyping, ability to lead and direct subordinate personnel, and a high school diploma or equivalent. Plaintiff bases this assertion on the vacancy announcement posted April 27, 1987, and the Regular Employee Requisition form. *See* Wilson Dep. Ex. 3. Defendant counters that, based on a later job description (which plaintiff claims was never officially approved) the position required a minimum of only five to ten years of experience. *See* Wilson Dep. Ex. 8. Randall Fowler had less than ten years of experience when he applied for the job (although the parties dispute whether he had six or seven and a half years of experience), while plaintiff had over thirty years of experience. *See* Fowler Dep. 24, Ex. 1; Morris Dep. 13–21, Ex. 1.

The defendant states that Fowler's performance was "exemplary" in all areas. Wilson Dep. Ex. 6. Plaintiff disputes this, offering evidence that Fowler was frequently tardy. Plaintiff's Opposition Attach. 9. Plaintiff claims that Fowler had no significant experience or training in supervision or as a group leader. Plaintiff also offers evidence that, based on Fowler's reviews two years after being hired for the Group Leader position, he was not familiar with all Assembly Department equipment, and was criticized for failing to keep his supervisor informed. *See* Fowler Dep. Ex. 6.

Other disputes surround Wilson's reaction to and handling of the plaintiff's application for the position of Assembler Specialist/Group Leader. First, plaintiff alleges that there were procedural irregularities regarding the processing of her application, constituting disparate treatment. She claims that she was not interviewed for the position, while Randall Fowler was interviewed both by Wilson and the personnel office. *See* Morris Decl. ¶ 3, Fowler Dep. 24–25, 28–29. Defendants have been unable to locate records of interviews with the plaintiff. Def.'s Suppl. Resp. to Request for Prod. of Docs. Defendant responds that whether or not she was interviewed is irrelevant because Wilson did speak with her about the position.

Plaintiff also claims that Wilson discouraged her from seeking the position, and stated that he wanted her to wait until he had some "light, easy work." Morris Dep. 105–06. The plaintiff asserts that because she successfully handled the physical aspects of the work, such a statement reflected age stereotyping and discriminatory intent. The defendant counters that even if this statement was proved, it would merely reflect Wilson's observation that some of the lifting involved with the job would cause plaintiff some difficulty.

At defendants' request, a physical examination of the plaintiff was ordered under Rule 35 of the Federal Rules of Civil Procedure. The parties disagree in their interpretation of the results. Defendants assert that the examination revealed the plaintiff could perform only "with difficulty" certain lifting tasks associated with the position. The plaintiff contends that the examination proved that she was capable of handling all the physical work without restriction. *See* Def.'s Mot. to Establish Filing Deadline, Attach.

## II. Analysis

To establish a *prima facie* case of discrimination in hiring under ADEA or Section 1981, courts have borrowed the framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973). *See, e.g., Carter v. Duncan–Huggins, Ltd.*, 727 F.2d 1225, 1232 (D.C.Cir.1984) (Section 1981); *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503 (5th Cir.1988) (ADEA). The plaintiff must show that she: (1) was a member of a protected class; (2) applied for a position for which she was qualified; (3) was not hired; and (4) the position remained open or one outside of the protected group was hired. *See McDonnell*, 411 U.S. at 804, 93 S.Ct. at 1825. The burden of production then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the action. Once the defendant advances evidence of a nondiscriminatory basis for its action, the burden

again shifts to the plaintiff, who ultimately must establish by a preponderance of evidence that the nondiscriminatory reasons advanced for plaintiff's rejection are a pretext for discrimination. The burden of persuasion rests at all times with the plaintiff. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *McDonnell*, 411 U.S. at 804, 93 S.Ct. at 1825.

Summary judgment is awarded when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Where there is a properly supported motion for summary judgment, the adverse party may not rest upon the "mere allegations or denials" of its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Lujan v. National Wildlife Federation*, —— U.S. ——, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). However, it is well established that the Court must believe the non-movant's evidence and draw all justifiable inferences in her favor. *Id.* at 255, 106 S.Ct. at 2513.

In reviewing the evidence to support a summary judgment motion, the Court must view the evidence "through the prism of the substantive evidentiary burden". *Id.* at 254, 106 S.Ct. at 2513. In an employment discrimination case, the evidentiary burden follows the three-step formulation set forth in *McDonnell, supra.*

Defendant seems to assert that it is entitled to summary judgment either because: (1) the plaintiff does not make a *prima facie* showing because she was not qualified for the position (due to a lack of communication skills or physical strength)[4], or (2) even if the plaintiff does present successfully a *prima facie* case, there was a legitimate nondiscriminatory reason for the decision not to hire her (the other candidate was more qualified and did not have the problems in the communications or physical strength areas).[5]

■ Plaintiff has offered sufficient evidence to maintain a *prima facie* case. It is undisputed that she is a member of the relevant protected classes, she applied for the position, she was rejected, and one who was not a member of the protected classes was hired. As to whether she was qualified for the position, the plaintiff offers affirmative evidence to support her contentions that: she had over thirty years experience in assembly work; she had successfully demonstrated her ability to handle the physical tasks through a Rule 35 physical examination; she had demonstrated leadership and communication skills as an Assembler Specialist and Group Leader. These contentions are supported in the record, and viewing the evidence in plaintiff's favor, the evidence is a sufficient basis for a reasonable jury to find that she was qualified for the Assembler Specialist/Group Leader position.

■ The plaintiff does not dispute that the defendant has offered a nondiscriminatory reason for not hiring her, namely, the alleged deficiency in her communication skills. However, she offers evidence, beyond mere allegations, to support her claim that this reason was merely a pretext for

---

**4.** The Court is not convinced by the plaintiff's assertion that her ability to demonstrate a *prima facie* case is "beyond dispute", or that the defendant conceded this point.

**5.** The defendant does not frame its argument in terms of the *McDonnell Douglas* framework, arguing that in cases such as this, where the contested issue relates largely to the relative qualifications of competing candidates, the *McDonnell Douglas* formula can fruitfully be collapsed into a single inquiry into the nature of

the position at issue and the corresponding abilities of the competing candidates. *See, e.g., Jackson v. Certified Grocers*, 1990 WL 36792, 1990 U.S. Dist. LEXIS 2409 (N.D.Ill.1990), *citing Nellis v. Service Web Offset Corp.*, 695 F.Supp. 398, 402 (N.D.Ill.1988); *see also Williams v. Boorstin*, 663 F.2d 109 (D.C.Cir.1980), *cert. denied*, 451 U.S. 985, 101 S.Ct. 2319, 68 L.Ed.2d 842 (1981). The Court does not find compelling reasons to apply this alternative approach.

discrimination. She provides job evaluations and evidence of experience as a group leader to show that the defendant's allegation of a communication deficiency was not justified and was not the real reason for her rejection. She also offers a variety of evidence regarding the decision to hire Fowler from which a reasonable jury might infer discrimination; for example, Fowler's alleged failure to meet the minimum qualifications for the position, the contentions of procedural irregularities in the hiring process, and her claim that her supervisor harbored paternalistic notions regarding her ability to handle the physical work associated with the position.[6]

These factual disputes go to the heart of the case, and their resolution will determine the outcome of this action. Both sides have marshalled evidence to support their claims, but it is not for the Court to interpret and weigh this evidence: "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ..." *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. at 2513. Because there are a number of genuine issues of material fact in dispute in this case, summary judgment is inappropriate.

### III. Conclusion

For all of the reasons set forth above, the defendant's Motion for Summary Judgment shall be denied. The Court shall issue an Order of even date herewith in accordance with this Memorandum Opinion.

---

**6.** The plaintiff also argues that Fowler and Wilson shared a "buddy relationship" that influenced the hiring process. The defendant claims that if, as the plaintiff asserts, the reason Wilson selected Fowler was because of his friendship with the defendant, the defendant must prevail, because hiring people because of personal relationships does not constitute illegal discrimination.

The Court declines to construe the plaintiff's argument so narrowly. The plaintiff offered evidence that Wilson had no black friends, and seems to suggest that this, along with his alleged preferential treatment of his younger white, male "buddy", indicates an exclusive system which evidences discrimination against older black females. While such allegations are hardly conclusive, they do constitute some evidence of the plaintiff's claim, and do not, as the defendant argues, defeat it.