United States Court of Appeals,

Fifth Circuit.

No. 91–2647.

Harry B. FIELDS, III, Plaintiff–Appellee Cross–Appellant,

v.

J.C. PENNEY COMPANY, INC., Defendant–Appellant Cross–Appellee.

Aug. 18, 1992.

Appeals from the United States District Court for the Southern District of Texas.

Before JOHNSON, GARWOOD, and WIENER, Circuit Judges.

PER CURIAM:

Harry B. Fields, III, sued J.C. Penney Co., Inc. (J.C. Penney), his former employer, claiming age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 through § 634. The jury found in favor of Fields on his claim and the district court awarded damages based upon the jury's verdict. The district court declined to grant J.C. Penney's motions for directed verdict and motion for judgment notwithstanding the verdict (JNOV). J.C. Penney appeals these rulings as well as rulings admitting certain disputed evidence. Fields cross-appeals for prejudgment interest on the backpay awarded by the jury. Persuaded that the district court erred in denying J.C. Penney's motion for directed verdict at the close of plaintiff's evidence, we reverse and render judgment in favor of J.C. Penney.

I. Facts and Procedural History

The undisputed evidence at trial demonstrated the following facts. Harry B. Fields, III, the forty-three year old plaintiff in this case, worked for J.C. Penney from 1967 until 1989 when he was fired. During that time, Fields held several different managerial positions in various J.C. Penney stores. In November 1987, Fields was transferred to J.C. Penney's Bay City store where he was assigned duties as the merchandising manager of the women's fashions departments. As a merchandising manager, Fields was required to maintain an inventory of desirable merchandise by

estimating sales and also preventing the departments from becoming overstocked. His duties also required that he manage sales personnel and present merchandise in an appealing manner. These were duties similar to those held by Fields at previous J.C. Penney stores.

When Pat Allen became the Bay City store manager in July 1988, he noted that Fields was having difficulty in several areas of Fields' responsibility. In a December 1988 performance review, Allen downgraded Fields' performance from level 3 (average) to level 4 (needs improvement). He also placed Fields on probation and set goals to assist Fields in regaining his satisfactory rating. In a subsequent performance review, Fields was again rated a level 4. His probationary period was extended 90 days, and Allen provided Fields a new list of objectives. On May 9, 1988, Allen fired Fields for failing to meet these objectives and for failing to improve his performance to Allen's expectations. Allen assumed Fields' duties, in addition to his regular managerial duties, and performed them for nearly two years until January 1991, when Allen was transferred to another store.

Shortly after Fields was fired in May 1989, J.C. Penney hired a new shoe salesperson, a Ms. Chris Ruth. Seventeen months later, in October 1990, Ruth was promoted to merchandise manager for the women's shoe department, a job which Fields had *not* previously held. Nevertheless, based on the fact that the new employee was younger than he was, Fields brought the instant suit pursuant to the ADEA claiming that he had been in effect replaced by the new employee and that he had been terminated because of his age (43). At trial the district court denied two motions for directed verdict made by J.C. Penney—one at the close of plaintiff's evidence and one at the conclusion of all of the evidence.

The jury found that Fields' age contributed to his firing and assessed damages of $24,196 as backpay and $75,000 as future lost wages. J.C. Penney moved for JNOV and a new trial; the motion was denied by the district court. J.C. Penney appeals.

II. Discussion

A. *The Standard of Review*

J.C. Penney has appealed the district court rulings on its motions for directed verdict and JNOV. By those motions, J.C. Penney asserted that Fields did not prove a prima facie violation of ADEA.

The standard of review for analyzing the district court's rulings on a motion for directed verdict and a motion for JNOV is substantially the same. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). This Court must review the decision of the district court by examining the evidence before the jury and the reasonable inferences drawn from that evidence. The aim is to determine whether a rational jury could reach the conclusion that this jury actually reached. This Court utilizes the same standard as the district court to determine whether sufficient evidence exists to support the jury verdict. "If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict," the court should grant a motion for directed verdict or a motion for judgment notwithstanding the verdict. *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc).

B. *Analysis of Evidence Produced by Plaintiff at Trial*

In order to recover under the ADEA, the plaintiff must first prove a prima facie case of age discrimination. To do so, the plaintiff must present evidence to show that: (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and either (4)(a) he was replaced by someone outside the protected class, or (b) he was replaced by someone younger, or (c) he was otherwise discharged because of his age.[1] *Bienkowski v. American*

---

[1]This Court has also identified the three alternatives within the fourth element as separate elements. *See, e.g., Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503 (5th Cir.1988). Because it is necessary to establish only one of these alternatives, however, it is more accurate to identify them as aspects of a single element.

*Airlines, Inc.,* 851 F.2d 1503, 1504–05 (5th Cir.1988).[2] The burden of production does not shift to the defendant until evidence sufficient to prove a prima facie case of discrimination has been presented. *Bohrer v. Hanes Corp.,* 715 F.2d 213, 218 (5th Cir.1983).

There is no dispute with respect to the first and third of these elements: Fields was discharged, and he was within the protected class at the time of discharge. There was dispute as to the second element, whether Fields was qualified. There was a quantity of statistical evidence introduced at trial on that issue, evidence which was subject to interpretation by the jury and which constituted some evidence upon which the jury could have found that Fields was qualified. This Court need not examine the evidence introduced on the second element in detail as the fourth and final element is dispositive of this case.

The fourth and final element necessary to prove a prima facie case is that Fields was replaced with someone younger or outside the protected class, or he was otherwise discharged because of his age. There is no evidence in the record indicating that Fields' replacement was younger or outside

---

[2]The test enumerated above for showing a prima facie violation of the ADEA was adapted from the case of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), where it was initially developed to show racial discrimination. In a racial context, the fourth element required the plaintiff to show that he was replaced by someone outside of the protected class or that he was otherwise discharged because of his race. Thus replacement by a person of another race would be sufficient evidence to prove a prima facie case.

In the context of age, the test requires some modification. The ADEA sets out a protected class as those employees 40 years of age or older. 29 U.S.C. § 631(a). Thus all persons under the age of 40 are outside the protected class. Replacement of an employee within the protected class—age 40 or older—with an employee outside the protected class—age 39 or younger—constitutes a clear violation under the *McDonnell Douglas,* test provided there is a sufficient difference in the age of the two parties. However, this test leaves open the possibility of discriminating against an older employee by replacing him with a younger employee when the younger employee is himself within the protected class—a situation not found in the racial context because of the definition of the class. For example, an employee terminated because he had reached the age of 60 who was replaced by an employee of age 50 would have no recourse based upon the *McDonnell Douglas* test as originally adopted. For that reason, this Court in *Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 565 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984), expanded the test to include those instances when an employee is fired on the basis of age and replaced by a younger employee who is himself within the protected class.

the protected class. During cross-examination, Fields stated that he did not know who replaced him after he was fired.

> Q: Okay. And after you were terminated, do you know who assumed your duties?
>
> A: After I was fired, no, sir, I don't.
>
> Q: So you don't know if anyone younger than you assumed the duties at the time you were fired, correct?
>
> A: No, sir, I do not.

3 Tr. 146–47.

In contrast to Fields' testimony was the testimony of Allen, the store manager who fired Fields. Allen stated that he assumed the duties of Fields and that he was 47 years of age at the time, four years older than Fields. Allen also testified that Ruth, the employee who was later promoted to merchandising manager of the shoe department, was not hired to replace Fields. It is therefore immaterial that Ruth was younger than Fields. Ruth's job was separate and apart from any duties previously performed by Fields.

A careful review of the record shows that the only evidence Fields presented to substantiate the fourth element of an ADEA claim was the testimony of Allen. He presented no other affirmative evidence. Moreover, he presented no controverting evidence to rebut Allen's statement that Allen himself assumed Fields' duties. Thus, the *only* evidence in the record showed that an older employee and not a younger one replaced Fields.

Fields also asserted that he was denied the opportunity to transfer to vacant positions in other stores. Through counsel, Fields claimed during oral argument and in his brief that the vacant positions he sought to obtain were filled by younger employees because J.C. Penney could pay lower salaries to them based upon their youth. However, Fields himself testified on cross-examination that he was ineligible for such a transfer based on his low performance rating. Furthermore, the record

does not substantiate Fields' claim that younger employees were paid lower salaries than he would have been paid. Fields, the plaintiff, has not pointed to any evidence in the record demonstrating what salary he would have received had he been transferred or what salary the employees who ultimately filled those positions received.

There is likewise no evidence in the record to suggest that Fields was otherwise discharged because of his age. In an attempt to sustain his burden of production, Fields points to his own testimony. Fields testified that a Mr. Glines, a manager of an unrelated J.C. Penney store, told him that he had heard that Fields was to be fired and that there was a lot of that going around with people of Fields' age.[3] This attenuated testimony, introduced after the plaintiff had already rested his case, does not provide a sufficient basis on which to conclude that Fields was fired because of his age. According to the record of Fields' testimony, Glines' statement was not that the people fired were terminated *because* of their age, but rather that several people recently discharged happened to be approximately the same age as Fields. There could, for instance, have been any number of reasons for the discharge of the other employees aside from age discrimination. Furthermore, Glines' asserted statements say nothing about the reasons for *Fields*' termination. Even if all the other employees had been terminated for age related reasons, that fact is not probative of the reasons underlying Fields' dismissal.

In sum, a review of the record reveals that the only evidence adduced as to Fields' replacement was the testimony of Pat Allen. Fields presented no contradictory evidence from which the jury could conclude that anyone besides Allen replaced Fields. Since Allen is older than Fields, there was simply no basis in the evidence for the jury's implied finding that a younger employee or someone outside the protected class replaced Fields. Without evidence of a younger replacement or evidence that otherwise demonstrated that age was the basis for Fields' termination, Fields failed to sustain his

---

[3]While this testimony may have constituted hearsay, J.C. Penney failed to preserve the error as no proper objection was made to its admission in the district court.

burden to present facts sufficient to prove a prima facie case of discrimination.

Because Fields failed to prove a prima facie case of age discrimination, J.C. Penney was never obligated to come forward with any evidence to rebut that claim. This Court need not reach the issue of whether the explanation offered by J.C. Penney was a pretext for discrimination as the plaintiff failed to shift the burden of production to the defendant.[4] The district court erred in denying J.C. Penney's JNOV motion.

## III. Conclusion

For the reasons stated, this Court reverses the district court's judgment and renders judgment in favor of J.C. Penney.

REVERSED AND RENDERED.

---

[4]This conclusion obviates the need to consider whether J.C. Penney's evidentiary questions were properly preserved for appeal and whether Fields as cross-appellant was entitled to prejudgment interest.