REVISED - July 6, 1999

UNITED STATES COURT OF APPEALS
For the Fifth Circuit

---

No. 98-30063

---

FERMAN CHANEY,

Plaintiff - Appellant-Cross-Appellee,

VERSUS

NEW ORLEANS PUBLIC FACILITY MANAGEMENT, INCORPORATED,

Defendant - Appellee-Cross-Appellant.

*******************************************

---

No. 98-30201

---

FERMAN CHANEY,

Plaintiff - Appellant,

VERSUS

NEW ORLEANS PUBLIC FACILITY MANAGEMENT, INCORPORATED,

Defendant - Appellee.

---

Appeals from the United States District Court
for the Eastern District of Louisiana

---

June 17, 1999

BEFORE GARWOOD, DAVIS, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Ferman Chaney sued New Orleans Public Facility Management, Inc. for unlawful retaliatory discharge, and succeeded in obtaining damages and reinstatement to his former position. We find that the evidence adduced at trial by Chaney is insufficient to support the jury's finding of liability, and accordingly we reverse the judgment below.

## I.

Ferman Chaney is an employee of New Orleans Public Facility Management, Inc. (NOPFMI), who was discharged, filed this employment discrimination lawsuit, and then was reinstated as a result of his victory in the district court. Chaney was originally hired by NOPFMI in conjunction with the opening of the Ernest N. Morial Convention Center in 1984. Chaney worked at the Convention Center continuously for twelve years until he was discharged. During this time, Chaney established a reputation as the primary problem-solver for roof leaks.

In October 1994, NOPFMI hired its first human resources director, Lawrence Robinson. In the course of his duties Robinson revised NOPFMI's policy and procedure manual, resulting in a much stricter work environment than that to which the Convention Center employees had become accustomed. The changes prompted by Robinson affected management as well, and supervisors were required to maintain logs of employees' job performance and give employees periodic formal evaluations. The new policies were promulgated in

-2-

March 1995. Robinson reviewed these new policies with each employee, including Chaney.

At the same time as the new policies were being implemented, Chaney's supervisor, Richard Lyons, was replaced as foreman by Gerard Johnston. Lyons subsequently filed a racial discrimination lawsuit against NOPFMI. The factual underpinnings of the Lyons litigation are important to the background of this case. Lyons, a white man, had been a foreman at the Convention Center, and his direct supervisor was Vincent Ducré, a black man. Lyons alleged that Ducré undermined his authority in favor of Johnston, who is black and who was one of Lyons' subordinates. When Lyons was demoted and Johnston was promoted to foreman (Lyons' former position), Lyons filed his lawsuit against NOPFMI, alleging racial discrimination.

Johnston was Chaney's supervisor during the period of time at issue in this appeal. Some Convention Center employees, including Chaney, were subpoenaed by counsel for Lyons for the purpose of providing testimony. On July 13, 1994, Chaney was required to leave work to meet the lawyers, and he provided them with a handwritten affidavit which supported Lyons' claims. Chaney claims that when he returned to work, he was confronted by Johnston, who accused: "Yeah, you tried to nail your boy, huh?"

Five days later, Chaney received a negative evaluation from his supervisors for the first time in his ten years of employment at the Convention Center. (Notably, Chaney had not received any formal evaluation whatsoever in the preceding four years.) This

event was followed by what Chaney describes as an "intense barrage of negative formal assessments and less formal 'write-ups'" by Johnston from July 1994 to August 1996.

The final event, which resulted in Chaney's termination, occurred on August 8, 1996. Chaney entered the carpenter shop to eat his lunch, and there he met Johnston, who told him to go repair a leak in the roof. Chaney responded that he was waiting for a phone call, and would complete the task after lunch. Johnston twice more ordered Chaney to attend to the repair immediately, and then he sent another employee. Chaney was suspended without pay, and on August 22 was informed by Robison that he had been terminated for "improper behavior towards supervisor" in the August 8 incident.

Subsequently, Chaney filed this lawsuit against his employer, alleging inter alia that he had been terminated in retaliation for providing the affidavit in the Lyons litigation, in violation of 42 U.S.C. § 2000e-3(a). The case was tried to a jury, which rendered a verdict in his favor. Chaney recovered damages and reinstatement to his former position. The district judge declined to enter judgment on the damages which the jury had awarded to Chaney for mental anguish. Both Chaney and NOPFMI appeal.

## II.

Both Chaney and NOPFMI appeal from adverse sufficiency-based rulings on NOPFMI's motion for judgment as a matter of law, *see* Fed. R. Civ. P. 50(a)(1). NOPFMI appeals the district court's

-4-

failure to grant judgment as a matter of law on Chaney's retaliation claim.

This Court reviews the decision below de novo, applying the same standards as does the district court. *See, e.g.*, **Fields v. J.C. Penney Co.**, 968 F.2d 533, 536 (5th Cir. 1992). The standard for granting judgment as a matter of law in employment discrimination is well settled. *See* **Rhodes v. Guiberson Oil Tools**, 75 F.3d 989, 992 (5th Cir. 1996) (en banc). We test the sufficiency of evidence supporting jury verdicts and summary judgments under the standard of **Boeing Co. v. Shipman**, 411 F.2d 365 (5th Cir. 1969) (en banc). In order to create a jury question, there must be a dispute in the substantial evidence, that is, evidence which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions. Consequently, a mere scintilla of evidence is insufficient to present a question for the jury. *See* **Boeing**, 411 F.2d at 374-75. Even if the evidence is more than a scintilla, **Boeing** assumes that some evidence may exist to support a position which is yet so overwhelmed by contrary proof as to yield to a directed verdict. *See* **Rhodes**, 75 F.3d at 992; **Neely v. Delta Brick & Tile Co., Inc.**, 817 F.2d 1224, 1226 (5th Cir. 1987).

### III.

Chaney's retaliation claim is based solely on the contention that his dismissal stemmed from his submission of an affidavit in the Lyons case. The governing statute provides: "It shall be an

unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A prima facie case of retaliatory discharge under 42 U.S.C. § 2000e-3(a) thus consists of proof that the employee engaged in protected conduct, that the employee was thereafter subjected to an adverse employment action, and that such adverse employment action was motivated by animus inspired by the protected conduct. If the plaintiff makes a prima facie case, the burden shifts to the employer to provide a legitimate, nonretaliatory reason for the adverse employment action. Should the employer provide a permissible rationale, the plaintiff then shoulders the ultimate burden of proving that the employer's proffered rationale was pretextual and that engaging in the protected activity was the but-for cause of the adverse employment action (*i.e.*, the employer actually retaliated against the employee). *See **Anderson v. Douglas & Lomason Co., Inc.***, 26 F.3d 1277, 1300 (5th Cir. 1994); ***McMillan v. Rust College, Inc.***, 710 F.2d 1112, 1116 (5th Cir. 1983); *see also **St. Mary's Honor Ctr. v. Hicks***, 509 U.S. 502, 510-11, 113 S. Ct. 2742, 2748-49 (1993); ***Texas Dep't of Community Affairs v. Burdine***, 450 U.S. 248, 252-58, 101 S. Ct. 1089, 1093-96 (1981); ***McDonnell-Douglas Corp. v. Green***, 411 U.S. 792, 802-05, 93 S. Ct. 1817, 1824-25 (1973). Chaney failed to satisfy his ultimate burden in this case because the evidence fails to demonstrate that NOPFMI's justification for his discharge --

Chaney's insubordination -- was a pretext and that retaliation was the real motive for his discharge.

## A.

As an initial matter, there is no evidence in the record that casts any shadow of possible pretext. Chaney concedes that he failed to comply with Johnston's orders on August 8, 1996. The policy and procedure manual governing employment at the Convention Center warns that disrespect for a supervisor and failure to follow a direct order are grounds for suspension or discharge. NOPFMI told Chaney that his refusal to follow a direct order was the reason for his discharge. The failure of a subordinate to follow the direct order of a supervisor is a legitimate nondiscriminatory reason for discharging that employee. In a case in which the employer has articulated a rational justification for terminating an employee, and the facts supporting that justification are not seriously disputed, the task of proving pretext becomes quite difficult. *See Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983).

That difficulty is compounded in this case, in which there is no evidence that NOPFMI's employment policies were enforced strictly against employees who helped Lyons, but not against other employees. Chaney himself testified that the work environment changed significantly for all employees after Robinson was hired as a human resources director. It is true that a record of Chaney's workplace infractions was developed in the months following his

affidavit, and that there was no such record beforehand, but, again, this is explained by NOPFMI's renewed enforcement of employment policies under Robinson's leadership, which required supervisors to keep logs of employees' workplace performance. Without evidence of disparate treatment, it is difficult to maintain that a straightforward application of workplace policies and procedures was pretextual. *See **Swanson v. General Servs. Admin.***, 110 F.3d 1180, 1186 (5th Cir.) (citing **Odom v. Frank**, 3 F.3d 839, 849 (5th Cir. 1993)), *cert. denied*, 118 S. Ct. 366 (1997).

## B.

Second, the evidence does not establish that any of the supervisors responsible for Chaney's discharge knew about Chaney's affidavit or its contents at the time Chaney was discharged. Chaney testified that he did not tell anybody at the Convention Center that he had given an affidavit for Lyons and that he never revealed the contents of the affidavit to anyone. Robinson, the human resources director, testified that he did not know about the affidavit at the time of Chaney's discharge, and that he did not learn about the affidavit until Chaney filed this lawsuit. Ducré, the foreman at the time the affidavit was submitted, testified that he was aware that some Convention Center employees had received subpoenas in the Lyons case, but that he had no specific knowledge that Chaney was one of them. Likewise, Johnston, Chaney's direct supervisor, testified that he did not know and nobody had told him

about Chaney's affidavit or its contents at the time of Chaney's termination.  If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.  *See* **Grizzle v. Travelers Health Network, Inc.**, 14 F.3d 261, 267 (5th Cir. 1994); *cf.* **McKennon v. Nashville Banner Publ'g Co.**, 513 U.S. 352, 359-60, 115 S. Ct. 879, 885 (1995) (an employer could not defend itself from an allegation of employment discrimination by offering a nondiscriminatory justification for discharge which was discovered after the actual discharge).

The best piece of circumstantial evidence of the employer's knowledge adduced by Chaney is the alleged confrontation in which Johnston purportedly stated: "Yeah, you tried to nail your boy, huh?"  Additionally, several witnesses stated a subjective belief, unsupported by personal knowledge, that Convention Center supervisors knew which employees were providing testimony to Lyons, and Chaney testified that in discussions about his negative work evaluations he told Ducré and Johnston, without elaboration, that he was "testifying against" Johnston.  But there is no direct evidence to contradict the managers' testimony that they were unaware of Chaney's affidavit.  The testimony of Chaney's colleagues was speculative at best.  Each of Chaney's witnesses had a lawsuit against NOPFMI, so all of the circumstantial evidence was entirely self-serving.  In a case such as this, in which the employer has provided a legitimate nonretaliatory reason for the employment action based on essentially uncontested facts, such

generalized evidence is of negligible probative value to prove intentional discrimination.  *See* **Elliott**, 714 F.2d at 564.

## C.

Finally, we note that fully two years passed between Chaney's submission of the affidavit and the allegedly retaliatory discharge.  While not entirely dispositive, this circumstance renders a theory of retaliation quite doubtful.  *See, e.g.,* **Grizzle**, 14 F.3d at 268.

## IV.

In sum, we are convinced that Chaney failed to prove causation in light of the overwhelming factual evidence supporting NOPFMI's claim that it discharged Chaney for nonretaliatory reasons.  The speculations of a few co-workers provided a very slight amount of circumstantial evidence to support Chaney's retaliation theory.  This evidence is simply insufficient in light of NOPFMI's perfectly rational justification for discharging Chaney, based on a workplace infraction which is not seriously disputed.  Our conclusion is bolstered by the absence of any evidence that Chaney's supervisors knew about his affidavit or its contents, the lack of evidence of selective enforcement of polices, and the lapse of two years between the protected action and the discharge.  We conclude that no reasonable juror could conclude that retaliation for the affidavit actually motivated Chaney's discharge.

For the aforementioned reasons, we REVERSE the judgment below based on the insufficiency of the evidence to prove retaliation. Our disposition on this point renders moot Chaney's appeal and all other arguments raised by the parties.