Henry W. BIENKOWSKI,
Plaintiff–Appellant,

v.

AMERICAN AIRLINES, INC.,
Defendant–Appellee.

No. 87–1582.

United States Court of Appeals,
Fifth Circuit.

Aug. 15, 1988.

Joe K. Crews, James C. Barbour, Dallas, Tex., for plaintiff-appellant.

Maureen F. Moore, American Airlines, Inc., Fort Worth, Tex., George C. Dunlap, Dallas, Tex., for defendant-appellee.

Before WISDOM, RUBIN, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant Henry Bienkowski disputes the district court's grant of summary judgment in favor of American Airlines on his age discrimination claim under 29 U.S.C. § 621 *et seq.* Because genuine issues of fact remain to be resolved in the case, we reverse the summary judgment and remand to the district court.

## BACKGROUND

Bienkowski worked for American as a security representative from October 1973 to February 1985. He arrived at American with extensive experience from a law enforcement career spent primarily with the Massachusetts State Police. Through April 1983, it is undisputed that Bienkowski's performance was satisfactory. However, his supervisors rated him below average as of June 1984. Finally, American terminated Bienkowski on February 1, 1985 noting poor performance as the cause. He was eventually replaced by David Divan, a former FBI officer, in October 1985.

American's security department is well populated by older workers. Bienkowski was 59 years old when he was terminated. Divan was 54 years old when he was hired. American has employed an employee older than Bienkowski both before and after Bienkowski's termination. Bienkowski's supervisor, the man who terminated him, was 57 at the time. The average age of the American security department employees was then 54.

The district court granted summary judgment to American because it found no evidence sufficient to create a jury issue that Bienkowski was discharged because of his age rather than because of poor performance.

*Standards of Review*

Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment where there is no genuine issue as to any material fact. A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). This standard is the same as that for weighing directed verdicts. *Id.* 106 S.Ct. at 2512. The judge must view the evidence presented through the prism of the plaintiff's substantive evidentiary burden. *Id.* at 2513.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), the Supreme Court formulated an evidentiary procedure for cases in which there is no direct evidence of age discrimination. Although the Court cautioned that this form is not the exclusive method of proceeding, *Id.* at n. 13, it fits the present case and has been generally adapted to the ADEA context. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253–6, 101 S.Ct. 1089, 1094–5, 67 L.Ed.2d 207 (1981). First, the plaintiff must prove a *prima facie* case of age discrimination. In this circuit, a prima facie case consists of evidence that a plaintiff: (1) was discharged; (2) was qualified for the position; (3) was within the

protected class at the time of discharge; (4) was replaced by someone outside the protected class, or (5) by someone younger, or (6) show otherwise that his discharge was because of age. *Elliott v. Group Medical & Surgical Service*, 714 F.2d 556, 565 (5th Cir.1983). If the plaintiff succeeds, the burden of production shifts to the defendant to rebut the presumption of discrimination created by the prima facie case by articulating a legitimate, nondiscriminatory reason for its disparate treatment of the plaintiff.[1] Finally, the plaintiff must prove that the defendant's reasons are pretexts for unlawful discrimination either by showing that a discriminatory reason more likely motivated the defendant or by showing the the defendant's reason is unworthy of credence. *Burdine*, 450 U.S. at 253–56, 101 S.Ct. at 1094–95. The plaintiff retains the burden of persuading the fact finder that impermissible discrimination motivated the adverse employment decision. *Id.*

### PRIMA FACIE CASE

The district court did not rule on the sufficiency of Bienkowski's prima facie case, having focused its attention on the lack of evidence that American's actions were pretexts for age discrimination. Two elements of the prima facie case require comment, however, because they are a *sine qua non* to further analysis.

■ First, American contends that Bienkowski was not "qualified" for his job as a security representative because his supervisors became unsatisfied with his work. Citing *Loeb v. Textron, Inc.*, 600 F.2d 1003 (1st Cir.1979), American contends that the *McDonnell Douglas* prima facie case, as adapted to the ADEA context, requires a plaintiff to prove "that he was performing his job at a level that met his employer's legitimate expectations." *Loeb's* adaptation of *McDonnell Douglas* in this regard has been widely quoted by the circuit courts. *See Lovelace v. Sherwin Williams Co.*, 681 F.2d 230, 244 (4th Cir.1982); *Wilkins v. Eaton Corp.*, 790 F.2d 515, 521 (6th Cir.1986); *Huhn v. Koehring Co.*, 718 F.2d 239, 243 (7th Cir.1983); *Halsell v. Kimberly–Clark Corp.*, 683 F.2d 285, 292 (8th Cir.1982); *Sengupta v. Morrison–Knudsen Co.*, 804 F.2d 1072, 1075 (9th Cir.1986). American advocated summary judgment in its behalf based on affidavits of two of Bienkowski's former superiors, which allegedly document the deterioration in his performance.

■ Although the *Loeb* approach has some appeal as a matter of principle, we cannot reconcile it with the Supreme Court's attempts, in *McDonnell Douglas* and *Burdine*, to simplify presentation of an employment discrimination case. Placing a plaintiff's "qualifications" in issue at both the prima facie case and pretext stages of a termination case is an unnecessary redundancy. Courts have struggled with the bifurcated analysis that results from *Loeb*. *See, e.g., Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, at 244–45 (4th Cir.1982).[2] The requirement that a plaintiff prove he is meeting his employer's reasonable expectations represents an imperfect attempt at analogy with *McDonnell Douglas*. In such a refusal to hire context, it stands to reason that a plaintiff's qualifications must be demonstrably sufficient for the position he seeks. *Loeb* itself sought to qualify this "qualifications" gloss, observing that "the fact that [a plaintiff] was hired initially indicates that he had the ba-

---

1. The ADEA specifically provides that discharge of protected individuals for good cause shall not be unlawful. 29 U.S.C. 623(f)(3) (1976). Moreover, establishment of a prima facie case of employment discrimination does not automatically entitle the plaintiff to a jury determination on the discrimination claim. The concept of "the prima facie case" outlined in *McDonnell Douglas* means only that the plaintiff has produced enough evidence to shift the burden of production to the defendant. *Halsell v. Kimberly–Clark Corp.*, 683 F.2d 285, 291 (8th Cir.1982).

2. Most courts have avoided the redundancy by either analyzing the issues of prima facie case and pretext in tandem, *See Huhn*, 718 F.2d at 242, or by assuming a prima facie case in order to found their decision solely on pretext. *See e.g., Lovelace*, 681 F.2d at 244. One court has finessed the issue by addressing it as part of the prima facie case but analyzing it negatively as would be done with pretext. *Wilkins*, 790 F.2d at 521 "There is no indication in the record that Wilkins was anything but [qualified.]"

sic qualifications....". 600 F.2d 1013, n. 10. Rather than import further procedural complication into an area that, before *McDonnell Douglas* and *Burdine*, was excessively arcane, we decline to read or apply strictly this facet of *Loeb*. Consequently, a plaintiff challenging his termination or demotion can ordinarily establish a prima facie case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action.[3] The lines of battle may then be drawn over the employer's articulated reason for its action and whether that reason is a pretext for age discrimination.

■ Second, Bienkowski contends that to establish his prima facie case he need only show that he was replaced by someone younger than himself, if even by a mite. The law is not so simplistic. A prima facie case of age discrimination can be constructed where the plaintiff was replaced by a younger worker even if the younger worker is himself within the protected class. *See Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 565 (5th Cir.1983). Such a showing is not, however, necessarily sufficient to prove a prima facie case. The ADEA does not lend itself to a bright-line age rule and in this respect differs from racial or sex discrimination cases, in which replacement by a worker outside the protected category is a convenient proof guideline. *See McCorstin v. United States Steel Corp.,* 621 F.2d 749, 754 (5th Cir. 1980). *Burdine* has been reasonably interpreted to require a plaintiff to show that he was replaced by a worker sufficiently younger in the context of his employment to permit an inference of age discrimination. *Maxfield v. Sinclair Intern.,* 766 F.2d 788, 792–93 (3rd Cir.1985).

For example, a 40–year old plaintiff could hardly contend that his replacement by a worker one day shy of his fortieth birthday gives rise to an inference of age discrimination even though the replacement is from outside the protected class. In the present case, Bienkowski is five years older than his replacement and the replacement was the same age, 54, as the average American security department worker. It appears possible that American consciously favored experienced security employees who were generally well within the class protected by the ADEA. Although this fact does not legally preclude the possibility of discrimination against Bienkowski, *cf. Furnco Const. Corp. v. Waters,* 438 U.S. 567, 579, 98 S.Ct. 2943, 2950–51, 57 L.Ed.2d 957 (1978), it is a close question whether he established a prima facie case. Because, however, the ultimate issue remains whether the plaintiff has been the victim of intentional age discrimination, we prefer to factor in the relative ages of Bienkowski and his colleagues as evidence on that issue. *See U.S. Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983).

## SUMMARY JUDGMENT

■ The trial court correctly and succinctly framed the summary judgment issue after it assumed the existence of a prima facie case and found that American articulated a legitimate, non-discriminatory reason for firing Bienkowski:

> The question for decision, therefore, is whether plaintiff has adduced sufficient countervailing evidence that his age was a determining factor in his discharge, so that he has presented a fact question....

As *Burdine* explained, at this point, any issue of pretext "merges with the ultimate burden of persuading the court that [plaintiff] has been the victim of intentional discrimination." *Burdine,* 101 S.Ct. at 1095. *See also, Elliott,* 714 F.2d 556, holding that plaintiff must prove discrimination *because of* age. *Burdine* went on to explain that a plaintiff may satisfy the burden of showing intentional discrimination in one of two ways: "either directly by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's profferred explanation is unworthy of credence." *Id.*

---

**3.** By this we mean that plaintiff had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered him unfit for the position for which he was hired.

While agreeing with the district court's framing of the issue, we disagree with its analysis.

In its motion for summary judgment, American introduced the affidavits of the two supervisors responsible for terminating Bienkowski and references to contemporary file memoranda on his performance. These recited Bienkowski's failure to follow directions and his weakness at prioritizing investigations in the year before he was fired. The supervisors documented specific investigations in which Bienkowski's performance was either untimely or incomplete, and they enumerated alleged warnings and counselling sessions where he was advised to improve his work.

Bienkowski, however, responded with his own affidavit, deposition excerpts from a former supervisor and fellow employee, and the EEOC file. He offered evidence both of "direct" and "indirect" discrimination, according to the *Burdine* formulation. Bienkowski points to comments by his former supervisors that could be interpreted as carrying an age-based perjorative implication.[4] His own affidavit contained a detailed and specific refutation of American's performance critique.[5] The parties have sharply joined issue over the quality of Bienkowski's performance. Not only did Bienkowski deny that his performance was criticized by his superiors, but he even denied the occurrence of meetings to discuss his performance, as documented by American's file memoranda. What he did in certain investigations, and the way in which he did it, are also directly contested. In addition, Bienkowski contends that he produced more than twice the number of investigation reports in 1984, the year leading up to his discharge—than he produced in 1983—33. From these affidavits, it appears unlikely that both Bienkowski and the supervisors are entirely candid.

We conclude that Bienkowski's evidence is barely sufficient to create a jury issue of intentional age discrimination. Unlike the district court, we are unwilling to assume that indirect comments about his age and adaptability are not possibly probative of an unlawful discriminatory intent, given the parties' sharp disagreements over the operative facts of Bienkowski's performance. Moreover, live testimony will assist the necessary credibility choices in this case more effectively than printed affidavits.

Our conclusion is carefully circumscribed and circumspect, however. First, Bienkowski has lent his oath to evidence much more specific than that in previous cases, which have held that a plaintiff's conclusory testimony of adequate job performance, standing alone, is insufficient to raise a jury issue of age discrimination. *See, e.g., Reeves v. General Goods Corp.,* 682 F.2d 515, 524 (5th Cir.1982); *Simmons v. McGuffy Nursing Home, Inc.,* 619 F.2d 369 (5th Cir.1980); *Aquamina v. Eastern Airlines, Inc.,* 644 F.2d 506 (5th Cir.1981); *Dale v. Chicago Tribune Co.,* 797 F.2d 458 (7th Cir.1986); *Bohrer v. Hanes Corp.,* 715 F.2d 213, 219 (5th Cir.1983). Questions of motivation are necessarily raised by the affidavits of Bienkowski and his supervisors, whose renditions of their conversations and meetings with each other differ diametrically and very specifically.

▮▮ Second, we do not hold that a verdict for Bienkowski would be supportable only on evidence that American's reasons for firing him are not justified or supported by objective facts. The Supreme Court has cautioned that

> The fact that a court may think the employer misjudged the qualifications of the applicants does not in itself expose him to [employment discrimination] liability, although this may be probative of whether the employer's reasons are pretext for discrimination.

*Burdine,* 101 S.Ct. at 1097. *See also Dale,* 797 F.2d at 464. The ADEA was not in-

---

4. The supervisors allegedly commented that Bienkowski looked "sharp" if he was going to look for another job. The supervisors also commented on his inability or willingness to "adapt" to new systems in the department.

5. He also relies on a charge that he was replaced by a *less-qualified* younger man. Like the trial court, we do not find this assertion supported in the record.

tended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers. *Thornbrough v. Columbus & Greenville R. Co.,* 760 F.2d 633, 647 (5th Cir.1985); *Elliott,* 714 F.2d at 567. The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated. *Cf. Bishop v. Wood,* 426 U.S. 341, 350, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976). Even if the trier of fact chose to believe an employee's assessment of his performance rather than the employer's, that choice alone would not lead to a conclusion that the employer's version is a pretext for age discrimination.[6] More is required, such as "direct" evidence of age discrimination, information about the ages of other employees in plaintiff's position, the treatment and evaluation of other employees, or the employer's variation from standard evaluation practices. *Compare McDonnell Douglas,* 93 S.Ct. at 1825.

We do not transgress these principles, because granting Bienkowski the inferences that may be drawn from the affidavits, a jury could conclude that his supervisors' evaluation of his performance lacked veracity and that their true motivation resided in their age-based comments.

*Thornbrough,* 760 F.2d 633, is inaptly cited by Bienkowski for the proposition that proof of error in an employer's articulated reasons for discharge may be alone sufficient to support a finding of intentional discrimination. *Thornbrough* was a reduction in force case in which the plaintiff had been furloughed while other much younger employees were retained. Actual disparate treatment among allegedly similarly situated employees thus appeared on the face of the plaintiff's evidence. Moreover, the *Thornbrough* court admitted that its decision stretches the ADEA to its limit. *Id.* at 647.

Third, our reversal of the summary judgment does not preclude the district court from issuing a directed verdict if it is later deemed appropriate. *Pruet Production Co. v. Ayles,* 784 F.2d 1275 (5th Cir.1986). The abbreviated record in this case is inconclusive. It contains disturbing inconsistencies between Bienkowski's and American's recollection of specific incidents. These inconsistencies could well melt away under the heat of trial and the bright light of cross-examination. Moreover, a jury may conclude that comments about Bienkowski's "adaptability" were related to his mental acuity, as the district court concluded, rather than to his age. The fact finder may decide that the age of Bienkowski's supervisors and the department as a whole contradict the possibility of age discrimination. It may believe either that Bienkowski's supervisors were not misinformed about his performance or even if they were, they were not discriminating because of his age. Although the legal standards for summary judgment and directed verdict are the same, after trial, the district court will be faced with a different set of facts to be weighed under that standard. *Cf. Elliott,* 714 F.2d at 562.

Faced only with the summary judgment record before us, we cannot conclude that no reasonable jury could return a verdict of age discrimination. Therefore, the summa-

---

**6.** The Third Circuit has held the contrary, i.e., that if a plaintiff's proof consists of only a refutation of the employer's legitimate nondiscriminatory reason for discipline, e.g. poor performance, plaintiff may obtain a favorable verdict of age discrimination. *Chippollini v. Spencer Gifts,* 814 F.2d 893 (3rd Cir.1987). We disagree with this view, because both the ADEA statute and the Supreme Court require that discrimination be based on age. *Burdine,* 101 S.Ct. 1089, 1097; *McDonnell Douglas,* 93 S.Ct. at 1823. There must be some proof that age motivated the employer's action, otherwise the law has been converted from one preventing discrimina-

tion because of age to one ensuring dismissals only for "just cause" to all people over 40. *See also White v. Vathally,* 732 F.2d 1037 (1st Cir. 1984). "Merely casting doubt on the employer's articulated reason does not suffice to meet the plaintiff's burden of demonstrating discriminatory intent, for '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons in the first place. *Burdine,* 430 U.S. at 234, 101 S.Ct. at 1094. To hold otherwise would impose on the defendant an almost impossible burden of proving "absence of discriminatory motive." *Id.* at 1043.

ry judgment is REVERSED and the case is REMANDED.