**Jimmy G. MOORE, Plaintiff,**

v.

**ELI LILLY AND COMPANY, Defendant.**

Civ. A. No. 3:91–CV–1644–G.

United States District Court, N.D. Texas, Dallas Division.

Sept. 3, 1992.

Durwood D. Crawford, Goins, Underkofler, Crawford & Langdon, Dallas, Tex., for plaintiff.

John R. deSteiguer, John V. Jansonius, Haynes & Boone, Dallas, Tex., for defendant.

## MEMORANDUM ORDER

FISH, District Judge.

Before the court is the motion for summary judgment of defendant Eli Lilly and Company ("Lilly"). For the reasons stated below, the motion is granted.

## I. BACKGROUND

This action under the Age Discrimination in Employment Act ("the ADEA"), 29 U.S.C. § 621 *et seq.*, arises from Lilly's decision to terminate the employment of the plaintiff, Jimmy G. Moore ("Moore"). Moore began working for Lilly in the pharmaceutical sales division in 1959. At the time of his termination, he was 59 years old.

In 1988, to assure compliance with the Prescription Drug Marketing Act of 1987, 21 U.S.C. § 353 (the "PDMA"), Lilly instituted internal procedures requiring pharmaceutical sales personnel to complete and return documentation regarding drug samples distributed to physicians (the "sample accountability procedures"). Under the sample accountability procedures, Moore

was required to maintain "call cards" identifying the quantity and type of drug given to each physician. At the end of each quarter, Moore had to submit an inventory sheet showing the quantity of each drug sample in his possession, along with the call cards pertaining to that quarter. After logging this information, the sample accountability department would notify Moore of any discrepancies between the amounts he claimed to have distributed and the inventory balance he reported.. Moore was then required to account for or explain any discrepancies. Failure to do so could result in a requirement that Moore submit daily logs or, alternatively, in termination.

Following the second quarter of 1990, Moore was informed that he was "out of balance" due to a discrepancy between the amount of drugs he claimed to have given out as samples and the final inventory. When Moore was unable to resolve this discrepancy, he contacted the sample accountability department. After discussing the situation with Kathy Hagerman ("Hagerman"), Moore wrote to Hagerman requesting that a number of his call cards be altered to reflect that in April of 1990, he had erroneously marked the distribution of Axid 150 while actually distributing Axid 300. Hagerman later learned from the shipping department that Moore had not been shipped any samples of Axid 300 before April of 1990. When Hagerman related this information to Moore, he asked that she return the letter requesting the change. Hagerman refused.

On October 12, 1990, Moore met with his supervisor, Charles Yelverton ("Yelverton"). During the meeting, Yelverton informed Moore that he was being terminated for falsifying his sample records. When asked by Yelverton if he wished to discuss the situation further, Moore declined and tendered his resignation, which was accepted by Yelverton. Moore then wrote to Lilly's Chairman of the Board complaining about his termination. Shortly thereafter, Thomas Coyne, Director of Personnel

("Coyne"), and Dick Wojcik, Vice–President ("Wojcik"), flew to Dallas to meet with Moore regarding his termination. As a result of the meeting, Moore's termination was modified to reflect an effective date of December 31, 1990.

On April 8, 1991, Moore filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Before the EEOC made any determination of that charge, Moore brought this action on August 15, 1991.

## II. ANALYSIS

### A. *Evidentiary Burdens on Motion for Summary Judgment*

 Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).[1] "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The movant makes such a showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *See Celotex Corporation v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the movant makes this showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 323–24, 106 S.Ct. at 2553. To carry this burden, the opponent must do more than simply show some metaphysical doubt as to the material facts. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Instead, he must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson,* 477 U.S. at 249, 106

---

**1.** The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate,

affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company,* 780 F.2d 1190, 1197 (5th Cir.1986).

S.Ct. at 2510. All of the evidence must be viewed, however, in a light most favorable to the motion's opponent. *Id.* at 255, 106 S.Ct. at 2513 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)). Summary judgment is properly entered against a party if after adequate time for discovery, he fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex,* above, 477 U.S. at 322–23, 106 S.Ct. at 2552.

### B. *Evidentiary Burdens in an Employment Discrimination Case*

■ The allocation of evidentiary burdens in an employment discrimination case is well-established. *See United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 714–16, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–58, 101 S.Ct. 1089, 1093–96, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 800–05, 93 S.Ct. 1817, 1823–26, 36 L.Ed.2d 668 (1973). Initially, an employee must establish a *prima facie* case of discrimination by proving that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was replaced by someone outside the protected class or can otherwise show that his discharge was because of his age. *Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1504–05 (5th Cir.1988). The establishment of a *prima facie* case creates a rebuttable presumption that the employer unlawfully discriminated against the employee, requiring the employer to articulate a legitimate, nondiscriminatory reason for its decision to terminate. *Burdine,* 450 U.S. at 253–54, 101 S.Ct. at 1094.

■ If the employer satisfies the burden of articulating a legitimate, nondiscriminatory reason for its action, the presumption of discrimination is negated, and the burden of production shifts back to the employee to prove, by a preponderance of the evidence, that the nondiscriminatory reason proffered by the employer was not the true reason for the adverse employment decision. The employee must, at "a new level of specificity," prove that the employer's articulated explanation of its conduct is probably pretextual. *Aikens,* 460 U.S. at 715, 103 S.Ct. at 1481 (quoting *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1095); *see also McDonnell Douglas,* 411 U.S. at 802–05, 93 S.Ct. at 1824–26.

### C. *Pretext*

In *Texas Department of Community Affairs v. Burdine,* above, the Supreme Court succinctly summarized the hurdle an employee must surmount to prove pretext.

> [Plaintiff's] burden now merges with the ultimate burden of persuading the court that [he] has been the victim of intentional discrimination. [Plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

*Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. The Court has been consistent in allocating this burden to the employee in any case in which employment discrimination is alleged. *See, e.g., Aikens,* 460 U.S. at 715–16, 103 S.Ct. at 1482.

In a line of cases beginning with *Thornbrough v. Columbus and Greenville Railroad Company,* 760 F.2d 633 (5th Cir. 1985), the Fifth Circuit has explored the relationship between the burden of proof an employee plaintiff alleging age discrimination would have at trial and his burden in resisting a motion for summary judgment filed by the employer. In *Thornbrough,* Judge Goldberg explained that on summary judgment the issue for decision "is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext." 760 F.2d at 646. Because the plaintiff in that case had produced evidence questioning the truth of the employer's reasons for termination, the court held that summary

judgment was improperly granted for the employer. *Id.* at 646–48.

The Fifth Circuit clarified the test for establishing pretext in *Bienkowski v. American Airlines, Inc.*, above, another age discrimination case. There the court made it clear that an employee's burden on summary judgment is more than a mere refutation of the nondiscriminatory reasons articulated by the employer. *Bienkowski*, 851 F.2d at 1508. Rather, the employee has to provide specific evidence, "such as 'direct' evidence of age discrimination, information about the ages of other employees in plaintiff's position, the treatment and evaluation of other employees, or the employer's variation from standard evaluation practices." *Id.*[2] Providing insight into its purpose in formulating such a list of examples, the court reasoned in a footnote that "[t]here must be some proof that age motivated the employer's action, otherwise the law has been converted from one preventing discrimination because of age to one ensuring dismissals only for 'just cause.'" *Id.* n. 6.

The latest in this line of cases is *Hanchey v. Energas Company*, 925 F.2d 96 (5th Cir.1990), also an age discrimination dispute. In that case, the court repeated the language found in footnote 6 of the *Bienkowski* decision and reiterated that if the employee attempts to demonstrate pretext indirectly, i.e., by showing that the employer's proffered reason is unworthy of credence, his proof "must extend beyond casting doubt on the reasonableness of the employer's action." *Hanchey*, 925 F.2d at 98. Taken as a group, these cases clearly require that a plaintiff resisting summary judgment in an age-discrimination case do more than simply present facts to refute the movant-employer's articulated reasons for termination. Instead, they outline a distinct "'pretext' burden," in the language of *Hanchey*, 925 F.2d at 98, that requires some proof of an age-motivated employment decision.

■ In the case at bar, the court will assume, for purposes of this motion, that Moore has established a *prima facie* case of age discrimination. Against the backdrop of this *prima facie* case, Lilly's articulated reason for its decision to terminate Moore, viz., a falsification of sample records, is undeniably legitimate and nondiscriminatory. Moore thus has the burden of demonstrating that Lilly's explanation for his termination is pretextual.

Moore identifies several facts in his attempt to satisfy this burden. He first contends that his discharge was improper because he did not falsify records or violate the PDMA, but merely mismarked sample cards. He further claims that it is not Lilly's ordinary policy to terminate a sales representative merely for being out of balance on the quarterly sample accountability reports.[3] Citing *Bienkowski*, 851 F.2d at 1508, Moore maintains that this departure from Lilly's usual company policy mandates a finding that the proffered explanation is pretextual. Additionally, he asserts that because Lilly provided a printed form specifically used for correcting mismarked call cards, it could not have considered that such occurrences would constitute a falsification of records justifying dismissal.

No evidence in the record, however, supports Moore's contention that he was dismissed for merely mismarking call cards.

---

2. In the present case, Moore has produced virtually no evidence of this type. He has failed to point out any facts suggesting that Lilly treated its older workers differently than its younger ones. *See United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983) ("[t]he 'factual inquiry' in [an employment discrimination] case is '[whether] the defendant intentionally discriminated against the plaintiff'" by treating him less favorably than others outside the protected class). In fact, it is Lilly which has provided evidence detailing its even-handed approach toward its entire workforce.

3. In the two years prior to Moore's termination, Lilly placed fifteen sales representatives on daily log for errors in marking cards or inventory sheets. Three of these representatives were over the age of fifty at the time that discipline was imposed. During the same period, eleven sales representatives were terminated for dishonesty or falsification of sales accountability records, including five under the age of forty, four between the ages of forty and fifty, and two (including Moore) who were 50 years of age or older.

Nor has Lilly ever intimated that Moore was terminated for any violation of the PDMA. On the contrary, what led to Moore's dismissal were his actions—taken as a whole—after he was informed that he was out of balance for the second quarter of 1990. Moore's contention that he was discharged for mismarking call cards cannot, on the present record, be taken seriously.

*Bienkowski* held that a variation from a standard practice is relevant only when it provides "direct evidence" of age discrimination. 851 F.2d at 1508. Because Moore has produced no evidence that Lilly's practice in meting out discipline to sales representatives within the protected class for errors in sample accountability or falsification of records differed from its practice in that regard for sales representatives outside that class, *Bienkowski* teaches that if there is any variation here, it is irrelevant.[4] Furthermore, even if the court could find that Lilly acted unreasonably in terminating Moore rather than placing him on daily log, this finding would be insufficient without additional proof that Lilly's explanation for Moore's dismissal was in reality a pretext for age discrimination. *See Hanchey,* above, 925 F.2d at 98.

Finally, Moore contends that a factual dispute exists regarding which of his superiors at Lilly made the actual decision to terminate him. He maintains that the decision was made by Yelverton, and that because Yelverton had made certain comments to Moore regarding retirement and age, a genuine issue of material fact exists as to whether Yelverton in truth dismissed him because of his age rather than for falsification of records. Additionally, Moore argues that Lilly's own agents have proffered inconsistent versions as to how he was fired and that the existence of these conflicting versions creates a factual dispute on the issue of pretext.

Neither of Moore's arguments regarding the manner in which he was fired suggests that Lilly's reason for termination was really a pretext for age discrimination. Even if Yelverton made the statements attributed to him by Moore, they do not show that Lilly's articulated reason for the decision to terminate Moore was pretextual. *See Simmons v. McGuffey Nursing Home, Inc.,* 619 F.2d 369, 371 (5th Cir.1980) (affidavit that board member of defendant employer was overheard to say, while considering a replacement for plaintiff, "we want a younger man this time" insufficient to defeat summary judgment); *Guthrie v. Tifco Industries,* 941 F.2d 374, 379 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992) ("stray remarks" insufficient to establish age discrimination). Merely inquiring about an employee's future plans for retirement is not sufficient to show that a subsequent termination was based on age. To so hold would have a chilling effect on the ability of an employer to conduct its business by, e.g., ascertaining the need for training programs for new employees or for changes to the employer's retirement programs.

Moore's assertion that a reasonable jury could find pretext, on the basis of conflicting stories regarding the manner in which he was terminated, is also unconvincing.[5] *Bienkowski* requires some proof that age was a motivating factor in the decision to terminate. 851 F.2d at 1508, n. 6. While these conflicting accounts indicate a factual dispute as to exactly *how* Moore was terminated, their existence does not provide direct (or even indirect) proof that he was fired because of *age.* Moore thus fails, in the words of *Hanchey,* 925 F.2d at 98, to

---

**4.** Lilly has produced uncontradicted evidence that its treatment of sales representatives with regard to discipline or termination was not based on age. *See* note 3, above. It naturally follows that Lilly's proffered explanation for Moore's termination is not pretextual. *See Bienkowski,* 851 F.2d at 1508.

**5.** Moore contends that the following conflicting versions have been given by Lilly employees as to how the decision to terminate him was reached: (1) upper management decided to fire him after meeting with him in Dallas; (2) upper management decided to have Yelverton confront him but not terminate him; and (3) Yelverton attended a meeting in which the decision to discharge him was made.

"carry. [his] 'pretext' burden." [6] See *Anderson,* above; 477 U.S. at 256, 106 S.Ct. at 2514 ("the movant [for summary judgment] has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict"). If Moore could prevail on the basis of such conflicts, then any inconsistent testimony by the employer's agents about the circumstances surrounding an employee's termination would be sufficient to defeat summary judgment. This, however, is not the law. *See Anderson,* above, 477 U.S. at 248, 106 S.Ct. at 2510 ("[o]nly disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment"); *Celotex,* above, 477 U.S. at 323, 106 S.Ct. at 2552 ("a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

### III. CONCLUSION

A close reading of the cases discussed above clearly reveals that the burden of showing pretext requires more than Moore has provided here. Because Moore has not produced sufficient evidence to demonstrate that Lilly's explanation for his termination was probably a pretext for prohibited age discrimination, Lilly's motion for summary judgment is GRANTED.

SO ORDERED.

---

**6.** The Fifth Circuit rejected a similar argument in *Hanchey,* where plaintiff argued pretext on the grounds that her employer gave three shift-ing, conflicting reasons for terminating her employment. 925 F.2d at 98–99.