**Heidi DARLAND, Plaintiff,**

v.

**STAFFING RESOURCES, INC.
d/b/a Temp Associates, Inc.
of Texas, Defendant.**

**No. 3:97–CV–3076–T.**

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 19, 1999.

Doug Perrin, Law Office of Doug Perrin, Arlington, TX, for plaintiff.

Mia M. Martin, Marc H. Klein, Thompson & Knight, Dallas, TX, for defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MALONEY, District Judge.

Before the Court is Defendant's Motion for Summary Judgment. The motion is opposed. After considering the motion, the response, and the reply, the Court is of the opinion that the motion should be granted.

This is an employment dispute. Plaintiff Heidi Darland is a former employee of Defendant Staffing Resources, Inc. Dar-

land claims SRI discriminated against her on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

The background facts are not in dispute. Darland began working for SRI in late 1996 in the Credit and Collections Department. She reported to Sherri Bruner, the Manager of Credit and Collections. During the summer of 1997, SRI promoted Bruner and divided her former supervisory functions into two new positions. In early August, Bruner announced that Barb Rhodes would be the new Credit Supervisor and Paul Dunn would be the new Collections Supervisor. Darland was not pleased that Dunn would be her supervisor. Before he was named as the new Collections Supervisor, Dunn had made comments and physically touched Darland in a manner that she felt was inappropriate. Despite her request that he stop, Dunn continued his action for some time before August 15, 1997. Dunn's promotion was to become effective on or around August 15, 1997.

On August 8, 1997, Bruner notified her staff that a client had invited them to a professional football game the following Friday. Because Darland and her husband shared a vehicle, and because Darland and Dunn lived in the same area, she accepted Dunn's offer to drive her home after the football game. Before the game, Darland had second thoughts about sharing a ride with Dunn, but because she was unable to arrange alternative transportation, she decided to allow Dunn to drive her home after the game on August 15.

After the game, Dunn drove Darland to her house. According to Darland, on the way home Dunn made several inappropriate comments. He told Darland that he had had extramarital affairs and that he wanted to have sex with her. Darland states that Dunn kept grabbing himself, putting his hand on her leg, and refused to drive straight home. When they finally arrived at Darland's house, she allowed Dunn to go inside, ostensibly to use her restroom. When he came out of the restroom, Dunn tried to get Darland to watch sexually explicit movies on television. Darland's husband soon came home, and she then left the room. Dunn and Darland's husband talked and Dunn stayed at the house until the next morning.

When Darland went to work the following Monday, she eventually told Rhodes about Dunn's conduct on the previous Friday night. Rhodes took Darland to Bruner's office where Darland recounted the story to Bruner. Bruner notified Scanlon, her Department Head, Sniadecki, Vice President of Employee Services, and Latner, Director of Employee Services, about Dunn's alleged conduct. After Darland told them what had happened, they thanked her and told her she could take time off with pay if she wanted, and that they would handle the situation.

SRI then confronted Dunn with the allegations. He denied Darland's version of the events and stated that Darland had acted strangely the night of the game. SRI placed Dunn on administrative leave pending the outcome of the investigation. SRI told both Darland and Dunn to prepare written statements of the incident. The next day SRI management met with Darland's husband, who corroborated Darland's version of events. Darland and Dunn both sent their statements to SRI that day.

On the next day, August 20, 1997, Dunn told the Vice President of Employee Services that while cleaning his car, he found a cigarette package that he believed belong to Darland and that it contained a white substance in the package. Dunn stated that because he believed the package was Darland's and that she had acted strangely the night of the game, he believed it might be drugs. After discussing the information provided by Dunn, SRI management decided to test both Dunn and Darland for illegal drugs.

Dunn and Darland were both requested to take a drug test. Several days later,

SRI received the results. Dunn tested negative for all substances, but Darland's tested came back positive for amphetamines and methamphetamines. On August 25, 1997, SRI terminated Dunn for inappropriate conduct. That same day, SRI notified Darland that she had tested positive and that it would conduct a confirmatory test. On September 5, 1997, SRI learned that the confirmatory drag test was positive. On September 8, SRI informed Darland that because of the drug test results, she was terminated.

Darland contends that she was sexually harassed by Dunn on August 15, 1997, and that she was terminated in retaliation for reporting the sexual harassment to SRI. SRI moves for summary judgment on both of Darland's claims.

Summary judgment should be entered only where the record establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R.CIV.P. 56(c). The movant bears the burden of establishing the propriety of summary judgment. *See Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986).

Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law will identify what facts are material. *See id.* at 248,

106 S.Ct. 2505. A dispute as to a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

 SRI first contends that it is entitled to summary judgment on Darland's claim of sexual harassment in the form of a hostile environment.[1] To establish a claim of a sexual harassment, a plaintiff must show that (1) she belongs to a protected class, (2) she was subject to unwelcome sexual harassment, (3) the harassment was based on sex, and (4) the harassment affected a term, condition, or privilege of employment. *See DeAngelis v. El Paso Mun. Police Officers Ass'n,* 51 F.3d 591, 593 (5th Cir.1995)[2]. To be actionable under a hostile environment theory, the harassment must be so severe or pervasive as to alter the condition of the plaintiff's employment and create an abusive working environment. *See Meritor Savings Bank FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). SRI seeks summary judgment on the fourth element. It argues that Darland cannot show that Dunn's conduct on August 15, 1997, was sufficiently severe or pervasive to create a hostile working environment.

 Here, the action about which Darland complains took place after work on a Friday night. When she reported the conduct the following Monday morning, she was allowed to go home with pay. She never again worked for SRI, much less

1. While Darland's complaint purports to allege both *quid pro quo* and hostile environment sexual harassment, the facts alleged could support only a hostile environment claim. Nowhere does Darland allege that she suffered a tangible employment action as a result of refusing to submit to a supervisor's sexual demands. Accordingly, her claim is treated as one for a hostile environment. *See Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 2265, 141 L.Ed.2d 633 (1998).

2. The court also listed as part of a plaintiff's case that the employer knew or should have known of the harassment and failed to take prompt remedial action. *See DeAngelis,* 51

F.3d at 593. However, the Supreme Court recently modified the standard to which an employer is held for harassment when the harasser is the employee's supervisor. *See Ellerth,* 118 S.Ct. at 2265 (imposing vicarious liability when the harasser is a supervisor with authority over the employee). In the instant action, it is not clear from the evidence if Dunn was a supervisor over Darland on August 15, 1997. Because the Court concludes that Darland has failed to establish that any harassment affected a term, condition, or privilege of employment, it need not reach the issue of employer liability and does not address the negligence standard stated in *DeAngelis.*

worked with or for the alleged harasser. Dunn was terminated for his actions before she was terminated. Dunn's actions happened after work, and she never again returned to work. Under these circumstances, it cannot be said that his actions in any way altered Darland's working environment. *See e.g. Morrison v. Carleton Woolen Mills, Inc.*, 108 F.3d 429, 439–40 & n. 6 (1st Cir.1997) (stating that behavior could not affect working conditions when the plaintiff was not at work); *Temparali v. Rubin*, 1997 WL 361019, at *3 (E.D.Pa. June 20, 1997) (stating that working conditions were not altered where alleged rape by co-worker occurred outside the workplace after a night of socializing and the plaintiff never subsequently worked near co-worker again). Accordingly, the Court is of the opinion that Darland has failed to establish a hostile environment sexual harassment claim.[3]

■ Next, SRI moves for summary judgment on Darland's claim that she was terminated from SRI because she reported Dunn's actions. The same burden-shifting analysis that applies in a Title VII disparate treatment claim also applies to a claim of unlawful retaliation. *See Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir.1996). Therefore, once the plaintiff constructs a *prima facie* case, a presumption of discrimination arises, which the defendant must refute by articulating a legitimate, nondiscriminatory reason for the adverse employment decision. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the defendant then articulates a reason for the employment decision which, if believed, would support a finding that the action was nondiscriminatory, the inference of discrimination raised by the

*prima facie* case disappears. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The inquiry then becomes the ultimate question of whether the defendant intentionally discriminated against the plaintiff. *See id.*

■ Because direct evidence of discrimination is rare, a Title VII plaintiff may resort to circumstantial evidence to prove her claims. *See LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 449 (5th Cir.1996). A plaintiff may establish circumstantial evidence of a defendant's intentional discrimination by demonstrating that the articulated nondiscriminatory reason for the employment action was pretextual. *See McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817; *LaPierre*, 86 F.3d at 449.

The plaintiff bears the ultimate burden of persuasion and can avoid summary judgment only if the evidence, taken as a whole: (1) creates a fact issue as to whether each of the employer's stated reasons was not the actual motivation for the action, and (2) creates a reasonable inference that age was a determinative factor in the adverse employment action. *See Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir.1996) (en banc). The employer will be entitled to summary judgment if the evidence, as a whole, would not permit a factfinder to infer that the true reason for the adverse employment decision was discriminatory. *See id.*

■ To establish a *prima facie* case of retaliation, a plaintiff must show (1) that she engaged in protected activity, (2) that she suffered an adverse employment action, and (3) that the protected activity was the "but for" cause of the adverse employment action. *See McMillan v. Rust Col-*

---

**3.** Darland's only response to SRI's argument that she cannot establish that harassment affected a term, condition, or privilege of employment is that after two recent Supreme Court opinions, a plaintiff need not show that harassment affected a term, condition, or privilege of employment. Neither *Ellerth* nor *Faragher* holds or implies that this statutory element is no longer required. Indeed, in both cases the lower courts had found a hostile environment so that the Court did not need to address the issue. *See Ellerth*, 118 S.Ct. at 2265; *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2293, 141 L.Ed.2d 662 (1998).

*lege, Inc.,* 710 F.2d 1112, 1116 (5th Cir. 1983). SRI argues that Darland cannot establish the third element—that her reporting Dunn's actions was the "but for" cause of her termination.

The Court will assume that Darland has established a *prima facie* case. The ultimate question is whether the conduct protected by Title VII was a "but for" cause of the adverse action, whether or not there where other reasons for her termination. *See McDaniel v. Temple Ind. Sch. Dist.,* 770 F.2d 1340, 1346 (5th Cir.1985). "In other words, even if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct." *See Long,* 88 F.3d at 305 n. 4. Establishing the causal link requirement that is the third element of the *prima facie* case, however, is much less stringent. *See id.* At this stage the plaintiff need not show that her protected activity was the sole factor motivating the defendant to terminate her. *See id.*

The Court will assume that Darland has at least established a *prima facie* case. Therefore, SRI must articulate a legitimate, non-discriminatory reason for discharging her. SRI contends that it terminated Darland because she failed a confirmed drug test. Darland does not dispute that she failed the drug test, but argues that she did not violate the company's drug policy and that SRI used the drug test as a pretext for terminating her.

For support of her pretext argument, Darland contends that she did not violate SRI's drug policy. The policy, she points out, prohibits use of an illegal substance on company premises or while conducting company business. Because SRI terminated her for testing positive on a drug test and not for using drugs on company premises or while conducting company

business, Darland argues that SRI did not terminate her for violating its drug policy. That, she says, is evidence that SRI's reason was pretext and that the real reason was discrimination.

▇▇▇ Evidence casting doubt on the employer's articulated reason is not sufficient evidence of discrimination. *See Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1508 (5th Cir.1988) (stating that more is required than proof that the employer's reason is untrue because, otherwise, the law is converted from one that prevents discrimination to one that ensures employees are terminated only for cause). Even if the employer violated its policy, there must also be evidence that its reason was in reality pretext for discrimination. *See Moore v. Eli Lilly and Co.,* 802 F.Supp. 1468, 1473 (N.D.Tex.1992). Furthermore, an employer's failure to follow its own policy is not, by itself, probative evidence of discriminatory intent in the absence of proof that the plaintiff was treated differently than other employees outside the protected class. *See Upshaw v. Dallas Heart Group,* 961 F.Supp. 997, 1000 (N.D.Tex.1997).

▇▇▇ SRI presents evidence that it has consistently refused to hire or has terminated employees who have tested positive for illegal drugs. Darland admits that she has no evidence to the contrary. Therefore, the Court concludes that even if SRI failed to follow its policy regarding drug use, there is no evidence that SRI's real reason was to terminate Darland for reporting Dunn's actions.

Darland also points to the timing of her termination as evidence that SRI's reason was pretext. She was terminated shortly after reporting the incident. It is also true, however, that Darland was terminated almost immediately after the confirming drug test results were made known to SRI.[4] In this case, the timing of her termi-

---

**4.** Darland's complaint does not allege that the drug testing itself was an ultimate em-

ployment decision taken in retaliation for her reporting sexual harassment so the Court ad-

nation supports SRI's articulated reason rather than demonstrating that it was pretext. While the timing may be enough to support Darland's requirement to show a causal connection in her *prima facie* case, it is not enough to support a finding that her termination would not have occurred but for her reporting of Dunn's actions. *See Long,* 88 F.3d at 305 n. 4.

In short, SRI has articulated a legitimate reason for terminating Darland, and Darland does not dispute that she failed the drug test. When an employer articulates a rational reason and that reason is not seriously disputed, the burden on the plaintiff to establish the reason as pretextual is "a heavy one indeed." *Elliott v. Group Med. & Surgical Serv.,* 714 F.2d 556, 567 (5th Cir.1983). Here, Plaintiff has failed to meet that burden. She has not produced evidence that creates an issue of fact as to whether SRI had any discriminatory intent to terminated her because she reported sexual harassment. Accordingly, SRI's motion for summary judgment on the retaliation claim should be granted.

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment, filed on January 8, 1999, is **granted.**

### *FINAL JUDGMENT*

This action came before the Court, Honorable Robert B. Maloney, presiding, and the issues having been duly considered and a decision having been rendered:

It is **ORDERED** and **ADJUDGED** that Plaintiff Heidi Darland's complaint herein against Defendant Staffing Resources, Inc., d/b/a Temp Associates, Inc. of Texas, is **dismissed with prejudice.**

It is **FURTHER ORDERED** and **ADJUDGED** that all relief not specifically granted herein is denied.

dresses only the termination. Her termination was closer in time to SRI's articulated reason for her termination than it was to her protected activity.