# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-31221
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
June 22, 2015

Lyle W. Cayce
Clerk

GLORIA A. BOYD,

> Plaintiff - Appellant

v.

CORRECTIONS CORPORATION OF AMERICA,

> Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:12-CV-3071

Before BENAVIDES, SOUTHWICK, and COSTA, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant Gloria Boyd (Boyd) appeals the district court's order granting summary judgment in favor of Defendant-Appellee Corrections Corporation of America (CCA). We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-31221

## I.     FACTUAL AND PROCEDURAL HISTORY

The following is a summary of the events underlying Boyd's complaint, i.e. the employment termination of Boyd by CCA. Unless otherwise noted, the following facts are undisputed.

CCA is a private corporation which, under contract with the Louisiana Department of Public Safety and Corrections, manages the Winn Correctional Center (WCC) in Winnfield, Louisiana. Boyd was employed by CCA for two separate employment periods, with the first ending in 2006. The second period, the only period relevant to this action, began with her hiring in March of 2009 by WCC Warden Tim Wilkinson and ended with her termination in April 2011. During this second period of employment, Boyd held the position of case manager of a unit within the CCA.

On April 10, 2011, Boyd received a report from an inmate, Edward Patrick (Patrick), that two other inmates, Tyrone Breaux (Breaux) and Jemonte Davis (Davis), were in possession of handguns.[1] Boyd did not pass along the information to anyone for two days. Ultimately, Boyd reported the gun possession by Breaux to her immediate supervisor, Unit Manager Delmer Maxwell (Maxwell). Boyd identified Breaux by his prison nickname; critically, however, Boyd affirmatively refused to name the informant. In coordination with Unit Manager Carl Coleman (Coleman), Maxwell identified Breaux and ordered a search of Breaux's person and cell, which revealed no contraband. However, neither Coleman nor Maxwell passed along the report to anyone else at WCC.

A day later, on April 13, 2011, Boyd told Chief of Security Virgil Lucas (Lucas) about the handgun report. By Boyd's own admission, she twice refused

---

[1] Patrick additionally reported that the handguns were supplied by a corrections officer who additionally supplied prohibited cellphones to the inmates.

to give the name of the informant to Lucas, instead insisting on disclosing the name only to WCC Warden Tim Wilkinson (Wilkinson); at the time, Wilkinson was on duty at a different facility. Therefore, Lucas immediately reported the situation to Nicole Walker (Walker), the acting warden and highest WCC officer. Walker immediately ordered Boyd to divulge the informant's name, which Boyd again refused to do absent express authorization by Warden Wilkinson. Via phone call, Wilkinson ordered Boyd's immediate disclosure of the informant's name to Walker, and Boyd complied.

The informant-identity disclosure set in motion a series of responsive events which ultimately resulted in the full lockdown of the WCC facility, as well as a full "shakedown" of all inmates within the facility. Additionally, Walker recommended Boyd's termination based both on her delay in reporting the handgun possession and on her failure to cooperate in the investigation by providing the informant's name. After a hearing, CCA terminated Boyd for violation of corporate policy requiring employee cooperation with investigations relating to their employment or facility operations. In turn, Maxwell and Coleman, the Unit Managers who failed to report the handgun possession to their superiors, but had not refused direct orders, received unpaid, two-day suspensions. Boyd filed an internal CCA grievance relating to the termination, which was denied based on Boyd's refusal of orders to disclose the informant. Due to Boyd's termination and an internal promotion, the WCC had two Case Manager vacancies in Boyd's unit for which CCA hired Israel Mouton (Mouton), a male, and Cathy Redding, a female.

On December 12, 2012, Boyd filed her original complaint, alleging that her termination constitutes gender discrimination and asserting a claim under

No. 14-31221

Title VII of the Civil Rights Act of 1964.[2] On September 30, 2014, the district court granted summary judgment in favor of CCA on two bases, first ruling that Plaintiff had failed to show different discipline of a comparator engaged in nearly identical behavior, and alternatively ruling that, even had Plaintiff shown her prima facie case, Plaintiff had failed to show that CCA's proffered non-discriminatory reason was pretextual.[3] The district court entered judgment on September 30, 2014, and Boyd timely appealed on October 24, 2014.[4]

## II.   STANDARD OF REVIEW

"We review a district court's grant of summary judgment de novo, applying the same standards as the district court."[5] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[7] In turn, a fact's materiality is determined by the substantive law insofar as "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[8] In evaluating the presence of such facts, the court disregards conclusory allegations or unsubstantiated allegations,[9] but otherwise must draw all reasonable inferences in favor of the nonmoving party.[10]

---

[2] 42 U.S.C. §§ 2000e. Boyd originally asserted additional claims which she later abandoned by amendment and stipulation. *See* ROA.29-31 & ROA.100.

[3] ROA 634-42.

[4] ROA 643-44.

[5] *Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 736 (5th Cir. 2015).

[6] Fed. R. Civ. P. 56(a).

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[8] *Id.*

[9] *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[10] *Willis v. Cleco Corp.*, 749 F.3d 314, 325 (5th Cir. 2014).

## III.  DISCUSSION

Boyd's sole claim at the time of summary judgment was her gender discrimination claim under Title VII, which prohibits employment discrimination on the basis of race, color, religion, sex or national origin.[11] Since Boyd relies only on indirect evidence of discrimination, the court applies the analytical framework set forth in *McDonnell Douglas Corp. v. Green*, under which the plaintiff bears the initial burden of establishing a prima facie case of discrimination.[12] In this context, such a showing requires evidence that Boyd (1) belongs to a protected class, (2) was qualified for the position, (3) suffered an adverse employment action, and (4) either was replaced by a similarly qualified person who was not a member of her protected group, or was treated less favorably than a similarly situated employee.[13] In making the latter showing of disparate treatment, the misconduct for which the employee was treated less favorably must be "nearly identical" to that of the comparator employee.[14] Upon Boyd's prima facie showing, the *McDonnell Douglas* framework shifts the burden to the employer to offer a legitimate, nondiscriminatory reason for the plaintiff's treatment, which is satisfied by raising a genuine issue of fact as to whether or not it discriminated against the plaintiff.[15] Assuming such a showing by the employer, the plaintiff must then show that the employer's proffered reason was a pretext for discrimination via the production of substantial evidence.[16]

In its motion for summary judgment, CCA first argued that Boyd could not satisfy her prima facie burden relating to the fourth prong, specifically that

---

[11] 42 U.S.C. § 2000e-2(a).

[12] *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007).

[13] *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

[14] *Id.* at 514.

[15] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

[16] *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001).

No. 14-31221

Boyd could not show that she was treated less favorably than employees who were similarly situated. The district court agreed with CCA's argument as to disparate treatment, finding that neither Maxwell nor Coleman committed the same act of noncompliance that resulted in Boyd's harsher punishment. It is true that both Maxwell and Coleman failed to report the alleged gun possession to their superiors, violations which later resulted in their unpaid suspensions. In contrast, Boyd refused multiple orders to disclose the name of the informant to her superiors, an act of insubordination which was specifically cited as the basis for her termination. On appeal, Boyd attempts to avoid this distinction by arguing that she did not refuse to disclose the informant's name, but instead insisted on disclosing the name only to the warden. This is a semantic distinction without a substantive difference: whether Boyd's refusal is characterized by an outright refusal to disclose, or a refusal to disclose to the requesting superiors (Lucas and Walker), it remains an insubordinate act which differentiates her from her proffered comparators, and prevents her satisfaction of the fourth prong by a showing of disparate treatment.

Before the district court and on appeal, Boyd also argues that the fourth prong was satisfied by her replacement by Mouton, a male outside her protected class. The district court did not address this argument, and on appeal CCA addresses it only by footnote. The evidence to which Boyd cites is an affidavit which discusses two Case Manager positions, resulting from Boyd's termination and an internal promotion, which were nonspecifically filled by a male and female.[17] Even viewing this scant evidence in the light most favorable to Boyd, the affidavit is ambiguous, and does not support Boyd's specific replacement by a male rather than a female.

---

[17] *See* ROA.541.

No. 14-31221

Moreover, even assuming Boyd's satisfaction of her prima facie showing, she does not dispute the validity of CCA's proffered reason for her termination, and fails to offer substantial evidence that her insubordination is a mere pretext for gender discrimination. Indeed, such a showing is difficult in light of evidence showing that: the majority of Case Managers, before and after her termination, were females; the recommendation of her termination was made by a female; and the hearing panel deciding her termination equally comprised males and females. Instead, Boyd's argument in this regard centers on her subjective estimation of the practical significance of her insubordination. However, this argument is unavailing since "[e]mployment discrimination laws are 'not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers.'"[18] Therefore, as the district court ruled, Boyd failed to satisfy her burden of showing that CCA's proffered basis for terminating her was pretextual.

For the foregoing reasons, we hold that Boyd failed to support her prima facie showing or, alternatively, to show that CCA's proffered basis for her termination was pretextual.

AFFIRMED.

---

[18] *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (omission in original) (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988)).